. SELYA, Circuit Judge.
 

 “[T]he dead tree gives no shelter.” T.S. Eliot,
 
 The Waste Land,
 
 I,
 
 The Burial of the Dead
 
 (1922). Like a shade tree, the automatic stay which attends the initiation of bankruptcy proceedings, 11 U.S.C. § 362(a) (1994), must be nurtured if it is to retain its vitality. This appeal, which pits a Chapter 13 debtor bent on saving his home against a
 
 *-612
 
 creditor bent on enforcing its rights under a mortgage, raises issues which touch upon the degree of judicial protection that the automatic stay invites. These issues are whether the automatic stay precludes a state court from undertaking ministerial acts after a bankruptcy filing; if not, what acts are exempt under that rubric; whether a bankruptcy court may grant retroactive relief from the automatic stay; and if so, what legal standard it should apply in prescribing such an anodyne.
 

 I. LAYING THE FOUNDATION
 

 We begin by retracing the labyrinthine corridors through which this litigation has passed.' In 1990 the debtor, Napoleon G. Soares, purchased a home in Brockton, Massachusetts. He executed a $70,000 promissory note to the Brockton Credit Union (BCU) and secured the note by a first mortgage on the real estate. After sustaining injuries in a motorcycle accident, Soares lagged in his monthly payments. BCU grew festive and commenced foreclosure proceedings in the state superior court. Soares did not file an answer. On March 22, 1995, BCU sent a letter to the clerk of court seeking an order of default and a judgment authorising foreclosure. Two days later Soares filed a bankruptcy petition, thus triggering the automatic stay. He immediately gave notice to BCU, but neither party alerted the state court. On April 10, with the stay still firmly in place, a judge of that court issued the requested default order. One week later, she authorized the entry of a foreclosure judgment.
 

 Soares missed some post-petition mortgage payments. On June 14, 1995, BCU, without apprising the bankruptcy court of the orders previously obtained in the state proceedings, filed á motion seeking relief from the automatic stay. The debtor’s then-counsel, Gerard Williamson, neglected to oppose BCU’s motion. The bankruptcy court granted the unopposed motion on June 29 (the same day, coincidentally, that Soares, unbeknownst to the judge, paid the post-petition arrearage). The court subsequently refused to entertain a belated objection filed by Williamson.
 

 When Soares missed his November payment, BCU activated the state court judgment. At the ensuing foreclosure sale, held on November 29, BCU itself bid in the mortgaged premises and paid approximately $14,-200 in overdue municipal taxes to clear the title. Soares thereafter sought relief in the state court on the ground that the foreclosure judgment had been issued in contravention of the automatic stay. The court denied the motion,' saying that its post-petition actions had been “ministerial” and that any error was harmless.
 
 [1]
 

 Soares’ unsuccessful foray apparently rang warning bells for BCU, which asked the bankruptcy court to clarify whether the June 29 order (lifting the automatic stay) ratified the earlier state court judgment. BCU served this so-called clarification motion on the attorney, Williamson, but not on Soares.
 
 [2]
 
 In a margin order entered on February 9, 1996, Judge Kenner addressed the question of retroactivity for the first time and vacated the automatic stay retroactive to March 24, 1995, “such that the [state] judgment and movant’s foreclosure shall not be deemed to have violated the automatic stay.”
 

 Less than three weeks later Soares, through newly retained counsel, filed a motion to reconsider both the February 9 order and the original grant of relief from the automatic stay. Judge Kenner denied the reconsideration motion on the merits
 
 [3]
 
 and
 
 *-611
 
 also denied a companion motion to void the foreclosure sale. The judge advanced three reasons for having lifted the automatic stay retroactively on February 9. First, because BCU “had done everything right,” it would be inequitable to upset its expectations. Second, because the foreclosure had wiped out junior lienholders, it would be too complicated to “unscramble the egg.” Third, because Soares could not immediately repay the funds that BCU had expended to clear title to the property, the economic realities favored ratification of the foreclosure.
 

 Soares appealed. The district court temporarily stayed further proceedings (blocking both a planned eviction and a possible resale of the property). Eventually, however, the district court — although finding that BCU had neglected its responsibility to apprise the state tribunal of Soares’ bankruptcy (an error which it termed “harmless”) — determined that the retroactive lifting of the automatic stay did not constitute an abuse of discretion.
 

 Soares again appealed. We enlarged the earlier stay on condition that Soares make monthly payments to BCU for use and occupancy of the premises (to be credited against the mortgage indebtedness, should Soares prevail on appeal).
 

 II. DISCUSSION
 

 To the extent that the threshold inquiries in this ease involve questions of statutory interpretation, we exercise plenary review.
 
 [4]
 

 See In re Jarvis,
 
 53 F.3d 416, 419 (1st Cir. 1995). From this vantage point we first address the purported exemption for “ministerial acts,” as it is only necessary to reach the retroactivity question if a violation of the automatic stay in fact occurred.
 

 A.
 
 The Nature of the State Court’s Actions.
 

 The parties clash head-on in respect to classification of the state court’s actions. The debtor claims that the state court order and judgment transgressed the automatic stay. The creditor claims that these entries, though occurring post-petition, were purely ministerial and, thus, not offensive to the stay. The debtor has the better argument.
 

 Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition stays the commencement or continuation of all nonbankruptcy judicial proceedings against the debtor.
 
 [5]
 
 Here, the state court default order eventuated more than two weeks
 
 after
 
 Soares filed for bankruptcy and the foreclosure judgment one week later. The issue, then, is whether these entries contravened the mandate of section 362(a)(1). BCU asserts that they did not because the stay was not in effect when the creditor requested the state court to act and because the state court’s actions, when taken, constituted ministerial acts.
 

 The creditor’s first assertion is mere buzznaeking. The focus here is whether or not the state court’s actions, when effected, transgressed the automatic stay. The date on which the creditor asked the state court to act, while material to an assessment of the creditor’s good faith (which is not seriously questioned here), does not bear on whether the activities themselves constituted the forbidden continuation of a judicial proceeding.
 

 BCU’s second assertion is more substantial. Ministerial acts, even if undertaken in a state judicial proceeding subsequent to a bankruptcy filing, do not fall within the pro
 
 *-610
 
 scription of the automatic stay.
 
 See Rexnord Holdings, Inc. v. Bidermann,
 
 21 F.3d 522, 527 (2d Cir.1994);
 
 Savers Fed. Sav. & Loan Ass’n v. McCarthy Constr. Co. (In re Knightsbridge Dev. Co.),
 
 884 F.2d 145, 148 (4th Cir.1989). But the state court’s actions in this case cannot properly be characterized as ministerial.
 

 A ministerial act is one that is essentially clerical in nature.
 
 See Black’s Law Dictionary
 
 996 (6th ed. 1990). Thus, when an official’s duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official’s discretion or judgment, the resultant act is ministerial.
 
 See United States ex rel. McLennan v. Wilbur,
 
 283 U.S. 414, 420, 51 S.Ct. 502, 504, 75 L.Ed. 1148 (1931) (indicating that a duty is ministerial if “the obligation to act [is] peremptory, and plainly defined”);
 
 Neal v. Regan,
 
 587 F.Supp. 1558, 1562 (N.D.Ind.1984) (describing a ministerial act as “one which ‘the law prescribes and defines ... with such precision as to leave nothing to the exercise of discretion or judgment’”) (citation omitted). Such acts can usefully be visualized as the antithesis of judicial acts, inasmuch as the essence of a judicial act is the exercise of discretion or judgment.
 
 See Black’s Law Dictionary, supra,
 
 at 846.
 

 Virtually by definition, a judicial proceeding does not conclude until the judicial function is completed, that is, until the judicial decision is made.
 
 See, e.g., Bidermann,
 
 21 F.3d at 528 (holding that the judicial function is completed “at the moment the judge direct[s] entry of judgment”). Frequently, routine scrivening, such as recordation or entry on the docket, follows on the heels of a judicial decision. Such actions— taken in obedience to the judge’s peremptory instructions or otherwise precisely defined and nondiscretionary — are ministerial and, consequently, do not themselves violate the automatic stay even if undertaken after an affected party files for bankruptcy.
 
 See, e.g., Knightsbridge Dev.,
 
 884 F.2d at 148 (suggesting that merely recording a previously decided award would be a “clerical act” and therefore would not infract the automatic stay);
 
 In re Capgro Leasing
 
 Assocs., 169 B.R. 305, 315-16 (Bankr.E.D.N.Y.1994) (stating that “entry of a judgment will constitute a ‘ministerial act’ where the judicial function has been completed and the clerk has merely to perform the rote function of entering the judgment upon the court’s docket”). By the same token, however, acts undertaken in the course of carrying out the core judicial function are not ministerial and, if essayed after bankruptcy filing, will be deemed to violate the automatic stay.
 

 Bidermann
 
 captures this distinction. There, the district judge ruled
 
 ora sponte
 
 and endorsed the motion papers. The defendant then sought refuge in bankruptcy. The Second Circuit held the clerk’s subsequent, post-petition entry of the judgment on the docket to be ministerial (and, therefore, unaffected by the automatic stay). 21 F.3d at 528. Other cases are to the same effect.
 
 See Heikkila v. Carver (In re Carver),
 
 828 F.2d 463, 464 (8th Cir.1987) (holding that a “routine certification” by the clerk, entered post-petition, did not transgress the automatic stay);
 
 Capgro Leasing,
 
 169 B.R. at 315-16 (holding the clerk’s entry of judgment on the docket to be ministerial when, prior to the bankruptcy filing, the court had ordered summary judgment). A parallel line of cases reinforces the notion that the compendium of ministerial acts excludes those involving deliberation, discretion, or judicial involvement.
 
 See, e.g., Ellis v. Consolidated Diesel Elec. Corp.,
 
 894 F.2d 371, 372-73 (10th Cir.1990) (invalidating a judicial decision that granted summary judgment two weeks after a bankruptcy filing);
 
 Knightsbridge Dev.,
 
 884 F.2d at 148 (voiding an arbitration award because the bulk of the panel’s deliberations occurred after the stay arose);
 
 Ellison v. Northwest Eng’g Co.,
 
 707 F.2d 1310, 1311 (11th Cir. 1983) (holding that while the automatic stay was in effect a court could not render a decision in a ease which had been briefed and argued pre-petition).
 

 This line of demarcation makes perfectly good sense. The statutory proviso which gives rise to the automatic stay says what it means and means what it says.
 
 See ICC v. Holmes Transp., Inc.,
 
 931 F.2d 984, 987 (1st Cir.1991). Confining the exemption for ministerial acts to those actions which are
 
 *-609
 
 essentially clerical, as opposed to judicial, honors this principle because such an interpretation comports precisely with the text of section 362(a)(1). In the bargain, this interpretation also facilitates the statute’s due administration.
 

 Silhouetted against this legal landscape, it is readily apparent that the state court’s actions in ordering a default and directing the entry of a judgment possess a distinctly judicial, rather than a ministerial, character. The record is totally barren of any evidence that the state court judge decided to grant BCU’s request prior to the date of the bankruptcy filing, and all visible signs point in the opposite direction. The judge did not enter the default order until more than two weeks after Soares sought the protection of the bankruptcy court and she did not direct the entry of a judgment authorizing foreclosure until another week had elapsed. Moreover, the judge indicated after the fact that she waited to confirm Soares’ nonmilitary status before directing the entry of judgment. This indicates deliberativeness and a concomitant willingness to exercise discretion.
 

 Nor does the fact that the judge later characterized her entry of the foreclosure judgment as “ministerial” require a different result. An appellate court is not bound by a trial judge’s unsupported description,
 
 see, e.g., Estate of Soler v. Rodriguez,
 
 63 F.3d 45, 47 n. 1 (1st Cir.1995);
 
 In re G.S.F. Carp.,
 
 938 F.2d 1467, 1473-74 (1st Cir.1991), and we are aware of no reason why that salutary principle would not apply with equal vigor to our assessment of a state court’s actions when the underlying question relates to the effect of those actions
 
 under federal law.
 
 Hence, we decline to adopt the label that the state court judge chose in hindsight to affix to her activities.
 

 We summarize succinctly. Because the decision which animated the entry of the order and judgment occurred after the stay was in force, those actions continued the state judicial proceeding within the meaning of section 362(a)(1). Consequently, the actions violated the automatic stay. Given this infraction, we now must assess the availability of a retroactive cure.
 

 B.
 
 The Operation of the Automatic Stay.
 

 We
 
 subdivide this part of our discussion into four segments. In each segment, our comments reflect our awareness that bankruptcy courts traditionally pay heed to equitable principles.
 
 See Bank of Marin v. England,
 
 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966);
 
 Jarvis,
 
 53 F.3d at 419.
 

 1.
 
 The Nature of the Stay.
 
 The automatic stay is among the most basic of debtor protections under bankruptcy law.
 
 See Midlantic Nat’l Bank v. New Jersey Dep’t of Envtl. Protection,
 
 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986);
 
 see also
 
 S.Rep. No. 95-989, at 54 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 5840. It is intended to give the debtor breathing room by “stopfping] all collection efforts, all harassment, and all foreclosure actions.” H.R.Rep. No. 95-595, at 340 (1977),
 
 reprinted in
 
 1978 U.S.C.C.AN. 5963, 6296-97;
 
 see also Holmes Transp.,
 
 931 F.2d at 987;
 
 In re Smith Corset Shops, Inc.,
 
 696 F.2d 971, 977 (1st Cir.1982).
 

 The stay springs into being immediately upon the filing of a -bankruptcy petition: “[b]eeause the automatic stay is exactly what the name implies — ‘automatic’— it operates without the necessity for judicial intervention.”
 
 Sunshine Dev., Inc. v. FDIC,
 
 33 F.3d 106, 113 (1st Cir.1994). It remains in force until a federal court either disposes of the case,
 
 see
 
 11 U.S.C. § 362(c)(2), or lifts the stay,
 
 see id.
 
 § 362(d) — (f). This respite enables debtors to resolve their debts in a more orderly fashion,
 
 see In re Siciliano,
 
 13 F.3d 748, 750 (3d Cir.1994), and at the same time safeguards their creditors by preventing “different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion’s share of the debtor’s assets.”
 
 Sunshine Dev.,
 
 33 F.3d at 114;
 
 see generally
 
 3
 
 Collier on Bankruptcy
 
 ¶ 362.03 (15th rev. ed. 1996).
 

 In order to secure these important protections, courts must display a certain rigor in reacting to violations of the
 
 *-608
 
 automatic stay.
 
 See Kalb v. Feuerstein,
 
 308 U.S. 433, 438-39, 60 S.Ct. 343, 345-46, 84 L.Ed. 370 (1940);
 
 Holmes Transp.,
 
 931 F.2d at 987-88;
 
 Smith Corset Shops,
 
 696 F.2d at 976. The circuits are split on whether actions taken in derogation of the automatic stay are merely “voidable” or, more accurately, “void.” Some courts characterize unauthorized postpetition proceedings as ‘Voidable.”
 
 See, e.g., Jones v. Garcia (In re
 
 Jones), 63 F.3d 411, 412 & n. 3 (5th Cir. 1995),
 
 cert. denied,
 
 — U.S.—, 116 S.Ct. 1566, 134 L.Ed.2d 666 (1996);
 
 Bronson v. United States,
 
 46 F.3d 1573, 1578-79 (Fed. Cir.1995);
 
 Easley v. Pettibone Mich. Corp.,
 
 990 F.2d 905, 911 (6th Cir.1993). Other courts — a majority, insofar as we can tell— call such actions “void,” but recognize that equitable considerations may alter some outcomes.
 
 See, e.g., Siciliano,
 
 13 F.3d at 751;
 
 In re Schwartz,
 
 954 F.2d 569, 571 (9th Cir. 1992);
 
 Job v. Calder (In re
 
 Colder), 907 F.2d 953, 956 (10th Cir.1990) (per curiam);
 
 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.),
 
 835 F.2d 427, 431 (2d Cir.1987),
 
 cert. denied,
 
 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988);
 
 Albany Partners Ltd. v. Westbrook (In re Albany Partners, Ltd.),
 
 749 F.2d 670, 675 (11th Cir.1984).
 

 Our earlier opinions — which we today reaffirm — align us with the majority view.
 
 See Holmes Transp.,
 
 931 F.2d at 987-88;
 
 Smith Corset Shops,
 
 696 F.2d at 976. This semantic difference has practical consequences because the characterization of an infringing action as ‘Void” or “voidable” influences the burden of going forward. Treating an action taken in contravention of the automatic stay as void places the burden of validating the action after the fact squarely on the shoulders of the offending creditor. In contrast, treating an action taken in contravention of the automatic stay as voidable places the burden of challenging the action on the offended debtor. We think that the former paradigm, rather than the latter, best harmonizes with the nature of the automatic stay and the important purposes that it serves.
 
 See generally
 
 3
 
 Collier on Bankruptcy, supra,
 
 ¶362.11[1] & n. 1 (observing that most courts hold violations void and terming this the better view).
 

 2.
 
 The Availability of Retroactive Relief.
 
 While the automatic stay is significant, it is not an immutable article of faith. Indeed, the Bankruptcy Code, 11 U.S.C. § 362(d), expressly authorizes courts to lift it in particular situations. Whether this statutory authorization encompasses retroactive relief is not entirely clear. We previously hinted that a court may set aside the automatic stay retroactively in an appropriate case.
 
 See Smith Corset Shops,
 
 696 F.2d at 976-77. We now confirm Smith’s adumbration, holding that 11 U.S.C. § 362(d) permits bankruptcy courts to lift the automatic stay retroactively and thereby validate actions which otherwise would be void.
 

 Section 362(d) confers upon courts discretionary power in certain circumstances to terminate, annul, modify, or place conditions upon the automatic stay.
 
 [6]
 
 In drafting the law, Congress chose to include both the power to terminate the stay and the power to annul it. When construing this language, wé must try to give independent meaning to each word.
 
 See United States Dep’t of Treasury v. Fabe,
 
 508 U.S. 491, 504 n. 6, 113 S.Ct. 2202, 2210 n. 6, 124 L.Ed.2d 449 (1993);
 
 United States v. Ven-Fuel, Inc.,
 
 758 F.2d 741, 751-52 (1st Cir.1985). The only plausible distinction between the two verbs in this context is that terminating the stay blunts it prospectively, from the moment the court’s order enters, whereas annulling the stay erases it retrospectively, as of some date prior to the entry of the court’s order (reaching as far back as the date when the debtor filed the bankruptcy petition, if the court so elects).
 

 ' Seen from this perspective, Congress’ grant of a power of annulment is meaningful
 
 *-607
 
 only if the court may thereby validate actions taken
 
 before
 
 the date on which the court rules. On any other construction, annulment lacks any independent significance; it merely replicates termination. It follows, therefore, that section 362(d) authorizes retroactive relief from the automatic stay.
 
 Accord Siciliano,
 
 13 F.3d at 751;
 
 Albany Partners,
 
 749 F.2d at 675;
 
 see also Franklin Sav. Ass’n v. Office of Thrift Supervision,
 
 31 F.3d 1020, 1023 (10th Cir.1994) (recognizing the authority to annul the stay and thereby grant retroactive relief);
 
 Sikes v. Global Marine, Inc.,
 
 881 F.2d 176, 178-79 (5th Cir.1989) (same);
 
 see generally
 
 3
 
 Collier on Bankruptcy, supra,
 
 ¶ 362.11[1],
 

 3.
 
 The Limiting Principle.
 
 Recognizing the discretionary authority of bankruptcy courts to relieve creditors and other interested parties retroactively from the operation of the automatic stay tells us nothing about the yardstick by which attempts to secure such relief should be measured. We turn next to this inquiry.
 

 Once again, the overarching purpose of the automatic stay informs our analysis. Because the stay is a fundamental protection for all parties affected by the filing of a petition in bankruptcy, it should not be dismantled without good reason.
 
 See, e.g., Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),
 
 779 F.2d 1068, 1072 (5th Cir.1986). Undoing the stay retroactively should require a measurably greater showing. Congress intended the stay to afford debtors breathing room and to assure creditors of equitable distribution.
 
 See
 
 H.R.Rep. No. 95-595,
 
 supra,
 
 at 340, 1978 U.S.C.C.A.N. at 6296-97. If retroactive relief becomes commonplace, creditors — anticipating
 
 post facto
 
 validation — will be tempted to pursue claims against bankrupts heedless of the stay, leaving debtors with no choice but to defend for fear that post-petition default judgments routinely may be resuscitated.
 

 We believe that Congress created the automatic stay to ward off scenarios of this sort. Thus, if congressional intent is to be honored and the integrity of the automatic stay preserved, retroactive relief should be the long-odds exception, not the general rule. In our view, only a strict standard will ensure the accomplishment of these objectives.
 
 See Albany Partners,
 
 749 F.2d at 675 (exr plaining that “the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay”). We conclude, therefore, that although courts possess a limited discretion to grant retroactive relief from the automatic stay, instances in which the exercise of that discretion is justified are likely to be few and far between.
 

 .We do not suggest that we can write a standard that lends-itself to mechanical application. Each case is sui generis and must be judged accordingly. But, while it is not practical to anticipate and catalogue the varied circumstances in which retroactive relief from the automatic stay may be warranted, some examples may be helpful.
 

 When a creditor inadvertently violates the automatic stay in ignorance of a pending bankruptcy, courts sometimes have afforded retroactive relief.
 
 See, e.g., Jones,
 
 63 F.3d at 412-13 (affirming retroactive validation of a foreclosure sale where the mortgagee had no notice of the bankruptcy filing);
 
 Mutual Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.),
 
 876 F.2d 34, 37 (5th Cir.1989) (similar). By like token, debtors who act in bad faith may create situations that are ripe for retroactive relief.
 
 See, e.g., Calder,
 
 907 F.2d at 956;
 
 Easley,
 
 990 F.2d at 911;
 
 Albany Partners,
 
 749 F.2d at 675-76.
 

 These examples — a creditor’s lack of notice or a debtor’s bad faith — clearly do not exhaust the possibilities. But they illustrate that a rarely dispensed remedy like retroactive relief from the automatic stay must rest on a set of facts that is both unusual and unusually compelling. The ease law echoes this conclusion.
 
 See Mataya v. Kissinger (In re
 
 Kissinger), 72 F.3d 107, 109 (9th Cir.1995) (stating that courts should indulge retroactive annulment only in extreme circumstances);
 
 In re Pulley,
 
 196 B.R. 502, 504 (Bankr.W.D.Ark.1996) (similar).
 

 4.
 
 Applying the Standard.
 
 Having constructed the limiting principle, we
 
 *-606
 
 now consider whether the bankruptcy court erred in validating the foreclosure judgment which had been obtained in violation of the automatic stay. We conclude that no proper predicate existed for doing so and that the bankruptcy court therefore abused its discretion in ordering retroactive relief.
 
 See Anderson v. Beatrice Foods Co.,
 
 900 F.2d 388, 394 (1st Cir.) (equating abuse of discretion with a meaningful error in judgment),
 
 cert, denied,
 
 498 U.S. 891, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990).
 

 Contrary to BCU’s importunings, it is the creditor’s knowledge, not the state court’s nescience, that is relevant to the question at hand. Bankruptcy law forbids creditors from continuing judicial proceedings against bankrupts,
 
 see
 
 11 U.S.C. § 362(a)(1), and, accordingly, it is the creditor’s obligation to inform other courts of the situation,
 
 see In re Timbs,
 
 178 B.R. 989, 991 (Bankr.E.D.Tenn.1994) (collecting cases). Here, both BCU’s knowledge and its failure to act are undisputed; the debtor immediately notified BCU of the bankruptcy filing, but BCU kept quiet and permitted the superior court to proceed in ignorance of the stay. We are reluctant to reward creditors who, despite notice of a bankruptcy filing, fail for no discernible reason to notify courts in which they have initiated proceedings of the changed circumstances.
 

 The other facts are no more conducive to the bestowal of retroactive relief. The creditor was represented by counsel throughout and does not claim that it misapprehended the effect of the filing. The bankruptcy court made no finding that Soares acted in bad faith, and, at any rate, the record does not contain any basis for such a finding. The procedural errors committed by both parties, such as BCU’s failure to serve Soares with the so-called clarification motion and Soares’ failure to lodge timely objections at various points in the proceedings, seemingly cancel each other out. And BCU’s entreaty that the equities favor retroactive relief rings unmistakably hollow; though BCU expended funds to clear title and maintain the property after foreclosing, this financial hardship is the natural consequence of its own failure to abide by the terms of the automatic stay. Thus, it is unredressable.
 
 See K-Mart Corp. v. Oriental Plaza, Inc.,
 
 875 F.2d 907, 916 (1st Cir.1989) (declining to deny permanent in-junctive relief which would require substantial demolition of an expensive structure where “appellant’s wound, deep as it appears, was self-inflicted”). In the last analysis, BCU is the author of its own misfortune.
 

 III. CONCLUSION
 

 To sum up, we hold that the state court’s post-petition issuance of a foreclosure judgment violated the automatic stay; that bankruptcy courts ordinarily must hold those who defile the automatic stay to the predictable consequences of their actions and can grant retroactive relief only sparingly and in compelling circumstances; and that, because this case involves no sufficiently unusual circumstances, the bankruptcy court abused its discretion in granting retroactive relief from the automatic stay.
 
 [7]
 

 In an abundance of caution, we note that our review is confined to the order granting the so-called clarification motion and the retroactive relief awarded therein. Although Soares may ask the bankruptcy court to reconsider its decision to lift the automatic stay, BCU can request a new foreclosure judgment in the state court unless and until the bankruptcy court reinstates the stay. For our part, we need go no further.
 

 Reversed and remanded. '
 

 [1]
 

 . Although Soares did not appeal from this ruling, BCU has never urged it as a basis for res judicata or collateral estoppel. Hence, we deem any such asseveration waived.
 

 [2]
 

 . ■ The title "clarification motion” is a misnomer. ' Neither the June 29 order nor the motion leading up to it mentioned the state court judgment, and the order clearly had not been meant to ratify the judgment.
 

 [3]
 

 .The judge was wise to reach the merits. The so-called clarification motion had been served in derogation of a standing order promulgated by the bankruptcy judges in the District of Massachusetts, which provides in pertinent part:
 

 (a) All motions and requests for orders must be served on the Chapter 13 trustee, the debt- or, the debtor’s attorney, persons who have requested notice, and all creditors....
 

 
 *-611
 
 Joint Procedural Order § 13.5 (Sept. 1, 1994). Despite this order, BCU had not served the motion on the debtor.
 

 [4]
 

 . A different standard of review applies to the bankruptcy court’s discretionary decision to lift the automatic stay retroactively.
 
 See
 
 Part 11(B)(4),
 
 infra.
 
 We review that ruling for abuse of discretion.
 
 See Tringali v. Hathaway Mach. Co.,
 
 796 F.2d 553, 561 (1st Cir.1986).
 

 [5]
 

 . Leaving to one side exceptions inapplicable to this appeal, the statute provides that a filed bankruptcy petition
 

 operates as a stay, applicable to all entities, of—
 

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this, title;_
 

 11U.S.C. § 362(a)(1).,
 

 [6]
 

 . The statute provides in pertinent part:
 

 On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ..., such as by terminating, annulling, modifying, or conditioning such stay—
 

 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;....
 

 11 U.S.C. § 362(d).
 

 [7]
 

 . We recognize the difficulties that attend the undoing of the foreclosure sale and the restoration of the pre-petition status quo, but that problem cannot in and of itself justify overlooking BCU’s unexcused violation of the automatic stay.
 
 Cf. K-Mart,
 
 875 F.2d at 916.