[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendants-appellants John and Sandra Payton appeal from a judgment rendered in favor of their former landlords, plaintiffs-appellees Paul and Peggy Curtis. The Paytons assert that the trial court lacked jurisdiction to issue a ruling in this case pursuant to the automatic stay provision of the Bankruptcy Code, contained in Section 362(a), Title 11, U.S. Code. Alternatively, the Paytons assert that the trial court erred by granting the Curtises a monetary award for damages to their property, since the damages were pre-existing or resulted from ordinary "wear and tear."
We conclude that the claims the Curtises brought against the Paytons arose before the commencement of the Paytons' bankruptcy case, and, therefore, fall within the "automatic stay" provisions of Section 362(a). We further conclude that, since the Curtises' action was brought in violation of the stay, the trial court's judgment rendered in the matter is void, rather than merely voidable, and, therefore, must be vacated despite the Paytons' failure to raise the issue of the automatic stay in a timely manner. Accordingly, the judgment of the trial court is Reversed
and Vacated.
 I
In September, 1996, the Paytons leased from the Curtises the premises located at 2984 Wyoming Dr., in Xenia, Ohio. The lease agreement covered the period from October 31, 1996 to September 30, 1997. After the one-year period had expired, the Paytons rented the premises on a month-to-month basis, as permitted under the lease, until December, 1997, when they moved out.
On February 2, 1998, the Curtises filed a complaint in the Xenia Municipal Court, Small Claims Division, alleging that the Paytons had damaged the leased premises, and had failed to pay the December 1997 rent. A trial was held on the Curtises' complaint, at which both parties appeared pro se. The Paytons acknowledged that they owed $575 for the December rent, plus a $25 late charge, but contested the alleged damages to the premises. During her testimony, Mrs. Payton mentioned that she and her husband had filed for bankruptcy because of Mr. Payton's medical bills.
On March 17, 1998, the trial court issued a judgment entry, finding that the Paytons were responsible for the damages to the premises alleged by the Curtises, and awarding the Curtises $881.31, plus interest and court costs.[1]
After obtaining counsel, the Paytons filed a Motion to Dismiss for Failure to Have Jurisdiction, a Motion for Judgment Notwithstanding the Verdict, and a Motion for a New Trial. In a memorandum in support of their motions, the Paytons represented that they were involved in Chapter 13 bankruptcy proceedings, and that, despite being aware of that fact, the Curtises had not sought relief from the automatic stay in the bankruptcy court prior to filing their small claims action. Thus, the Paytons asserted, the trial court lacked jurisdiction to enter judgment in this case. Additionally, the Paytons argued that the property damages alleged by the Curtises resulted from "normal wear and tear," and, therefore, were the landlord's responsibility.
On April 14, 1998, the trial court issued a judgment entry overruling the Paytons' post-trial motions. The trial court refused to dismiss the case for lack of jurisdiction, since, according to the trial court, neither of the Paytons had advised it that they were involved in bankruptcy proceedings. The trial court did express a willingness to stay all action to enforce the judgment pending resolution of the bankruptcy proceeding, but required the Paytons' counsel to submit evidence showing: (1) that the Paytons actually did file for bankruptcy; and (2) what the status of their case was. Finally, the trial court found that the damages to the premises exceeded normal wear and tear, and thus refused to grant the Paytons either a judgment notwithstanding the verdict or a new trial.
The Paytons subsequently submitted the evidence requested by the trial court, showing that they had filed their bankruptcy case on November 12, 1997. The trial court entered a hand-written notation on the Paytons' submission, ordering that "[a]ll further action in this case is stayed pending disposition in bankruptcy."
The Paytons appeal from the trial court's April 14, 1998 judgment entry.
 II
The Paytons' First Assignment of Error states:
 THE COURT ERRED IN ISSUING JUDGMENT IN THIS MATTER SINCE A BANKRUPTCY CASE WAS PENDING.
The Paytons argue that because they were engaged in bankruptcy proceedings at the time this case was commenced, the trial court lacked jurisdiction over the matter pursuant to the automatic stay provision contained in Section 362(a)(1), which provides in relevant part:
 Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title * * * operates as a stay, applicable to all entities, of —
 (1) the commencement * * * of a judicial * * * action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]
Section 362(a)(1) operates as a stay to the commencement or continuation of any action brought against a debtor, where the action: (1) was or could have been commenced prior to the commencement of the bankruptcy action; or (2) was brought to recover a claim against a debtor that arose prior to the commencement of the bankruptcy action. Conversely, actions involving claims that arise after the commencement of the bankruptcy case are not stayed under Section 362(a)(1), although enforcement of the judgment on such claims is typically stayed.Bellini Imports, LTD. v. Mason Dixon Lines, Inc. (C.A. 4, 1991), 944 F.2d 199, 201. The automatic stay becomes effective at the moment the debtor's bankruptcy petition is filed. In reHerron (Bkrtcy.N.D. Ohio, 1995), 177 B.R. 866, 868.
The purpose of the automatic stay is to give the debtor a "breathing spell" from his creditors, by stopping all collection efforts, harassment, and foreclosure actions directed against him, thereby providing him with an opportunity to take stock and formulate a repayment and reorganization plan. See Grady v. A.H.Robins Co., Inc. (C.A. 4, 1988), 839 F.2d 198, 200, quoting House Report No. 95-595, 95th Cong. 1st Sess. 340-341 (1977); Senate Report No. 95-989, 95th Cong.2d Sess. 54-55 (1978); reprinted in 1978 U.S. Code Cong. Adm. News 5787 at 5840 and 6296-6297.
Although the primary purpose of the automatic stay is to benefit the debtor, the stay also provides his creditors with an important protection as well. Lynch v. Johns-Manville Sales Corp.
(C.A. 6, 1983), 710 F.2d 1194, 1197. Specifically,
 [b]y prohibiting * * * a race for the debtor's assets and assembling all the creditors and their claims into the Bankruptcy Court for a single organized proceeding, the stay facilitates the administration of the bankruptcy case to allow the orderly resolution of all claims and the distribution of the debor's assets in accordance with the priorities recognized by the Bankruptcy Code.
9(A) American Jurisprudence 2d (1991) 284, Bankruptcy, Section 1369. (Footnotes omitted.) See, also, Lynch, supra.
Here, the Paytons filed their bankruptcy petition in November, 1997, and the Curtises filed their action in small claims court in February, 1998. The unpaid rent was not due until the first of December, 1997. The Curtises were not able to assess the damages to the premises until they regained possession of them in late December, 1997. Thus, the Curtises' action to collect for the unpaid December rent, late fee, and damages to the premises is not an action that "was or could have been commenced" prior to the filing of the bankruptcy petition. Consequently, the remaining question is whether the Curtises' action against the Paytons is an action "to recover a claim * * * that arose before the commencement of the [bankruptcy] case."
The Curtises essentially brought two claims against the Paytons. The first was for non-payment of the December rent and the accompanying late fee, and the second was for the alleged damages to the premises that occurred during the Paytons' tenancy. At first blush, it would seem that both of these claims arose post-petition, and are not covered by the automatic stay, since the December rent and late fee became due after the November 12th filing of the bankruptcy petition, and since the Curtises could not assess the damages done to their premises until after they regained possession of them in late December.
However, Section 101(5)(A), Title 11, U.S. Code defines "claim" to mean, "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Since the definition of claim used in Title 11 includes contingent, unliquidated, and unmatured rights to payment, the automatic stay provision of Section 362 even applies to claims that become fixed only after the commencement of the bankruptcy case. 3 King, Collier on Bankruptcy (15 Ed.Rev. 1998) Section 362.03[3][a]. Thus, claims that are contingent or unliquidated prior to the commencement of the bankruptcy case nevertheless "arise" before the commencement of the case for purposes of Section 362(a)(1). Id. Furthermore, "[a] claim arises at the time an obligation is incurred, not when it is due." Id. In short, the automatic stay provision in Section 362(a)(1) "encompasses all claims, causes of action, or rights to any form of civil legal relief that are founded on factual bases that arose pre-petition." In re Atkins
(Bkrtcy. D. Minn. 1994), 176 B.R. 998, 1006. See, also, Grady, supra
(claim for injuries sustained by use of an interuterine contraceptive device [a Dalkon Shield], which had been inserted in claimant before the manufacturer of the device filed its bankruptcy petition, was considered a pre-petition claim, despite the fact that the claimant's injuries did not manifest themselves until after the petition was filed).
One court has held that a pre-petition act by a debtor that gives rise to future liability is not sufficient to bring any subsequent action filed by a claimant within the definition of claim; instead, according to this court, the claimant's right to payment must exist pre-petition in order for the action to be considered a claim. Avellino Bienes v. M. Frenville Co., Inc.(In re M. Frenville Co., Inc.) (C.A. 3, 1984), 744 F.2d 332,334-337. In arriving at its decision, the Frenville court determined that, since the Bankruptcy Code did not provide guidance on the issue of when a "right of payment" arises, it would turn to state law for the answer. Id. at 337. However, theFrenville court overlooked the fact that the definition of claim contained in the Bankruptcy Code, includes a right to payment that is fixed or contingent, liquidated or unliquidated, etc. Section 101(5)(A), Title 11, U.S. Code. Thus, we, too, decline to follow the decision in Frenville. See Grady, supra, at 201, In reBaldwin-United Corp. (Bkrtcy.S.D.Ohio 1985), 48 B.R. 901, 903-904; see, also, Collier on Bankruptcy, supra (recommending that cases like Frenville not be followed).
Here, the parties' lease agreement required the Paytons to give the Curtises 30-days notice of their intent to vacate the premises. The Paytons did not notify the Curtises of their intent to leave until November 28, 1997. Therefore, the Paytons' obligation to pay the December rent in a timely manner was incurred before the commencement of the bankruptcy case. Thus, the Curtises' claim for the December rent and late fee is considered a pre-petition claim that is subject to the automatic stay, despite the fact that payment was not due until the first of December. Collier on Bankruptcy, supra.
As to the Curtises' claim for damages to the premises, the types of damage alleged, e.g., the need to repaint the walls, and clean the carpet, obviously were incurred throughout the Paytons' tenancy. The Paytons, who lived at the premises for about 14 months, lived at the premises for only about five weeks after the filing of their bankruptcy petition. Because it is apparent that the vast majority of the damages alleged were incurred pre-petition, the automatic stay also applies to this claim, despite the fact that the Curtises were not able to assess the damages and bring their claim until after the petition had been filed. See Grady, supra.
Although we have found that the Curtises' claims against the Paytons arose before the commencement of the bankruptcy case, and, therefore, are subject to the automatic stay, the circumstances of this case present an additional issue that we must decide.
The trial court refused to dismiss this case on the grounds that the automatic stay precluded it from ruling on the matter, because, allegedly, neither Mr. or Mrs. Payton had informed it that they were involved in bankruptcy proceedings. However, the transcript demonstrates that Mrs. Payton did testify at trial that they had filed for bankruptcy. The Paytons contend that having been so informed, the trial court should have recognized, suasponte, that it lacked jurisdiction over the matter, dismissed the case, and advised the Curtises to seek a release from the stay in Bankruptcy Court. However, the Paytons did not testify at trial as to the specific date on which they filed their bankruptcy petition — a fact that is critical in determining whether the claims being raised are pre-petition or post-petition, and, thus, subject to the automatic stay. Furthermore, leaving this omission aside, it is generally not the responsibility of the trial court "to spot issues;" rather, it is the responsibility of the parties to raise, in a timely fashion, any arguments they want the trial court to consider. The failure to do so generally results in a waiver of those arguments. Varisco v. Varisco (1993), 91 Ohio App.3d 542,545.
Here, while the Paytons mentioned during the trial that they had filed for bankruptcy, they did not argue that the trial court lacked authority to rule on the matter as a result of the automatic stay, until after the trial court had rendered judgment. Thus, the Paytons failed to raise the issue of the automatic stay in a timely manner. However, whether the waiver doctrine can be applied in this case is dependent upon whether an action brought in violation of the automatic stay is void or merely voidable.
Generally, actions taken in violation of the automatic stay are void and without force and effect even if the person violating the stay had no notice or knowledge of the filing of the bankruptcy petition or of the automatic stay; thus, actions taken by nonbankruptcy fora in violation of the stay, like the post-petition entry of judgments, are legal nullities without force or effect. 9A American Jurisprudence 2d (1991) 390 Bankruptcy, Section 1544. Although most courts have held that actions taken in violation of the stay are void and without effect, some courts have found that actions taken in violation of the stay are merely voidable, not void, and permit such actions to take effect if they are not objected to. Collier on Bankruptcy, Section 362.11[1].
The Sixth Circuit has adopted the view that actions taken in violation of the stay are merely voidable rather than void, and, therefore, has held that the protections of Section 362(a) are unavailable to a debtor who: (1) unreasonably withholds notice of the stay, and the creditor would be prejudiced if the debtor is able to raise the stay as a defense; or (2) is attempting to use the stay unfairly as a shield to avoid an unfavorable result in state court. Easley v. Pettibone Michigan Corp. (C.A. 6, 1993),990 F.2d 905, 911. If we were to apply this approach to the case before us, then the Paytons' failure to have raised the issue of the automatic stay in a timely manner would prevent them from raising it successfully now. Nevertheless, we are not inclined to follow the approach adopted by the Sixth Circuit.
In Easley, the Sixth Circuit cited two reasons for concluding that actions brought in violation of the automatic stay are voidable rather than void. First, the court noted that Section 362(d) allows a bankruptcy court to annul the stay, and to permit the annulment order to operate retroactively to validate actions taken by a party who was unaware of the stay. Easley, supra, at 909-910. Second, the court noted that several federal circuit courts have recognized an "equitable exception" to the operation of the automatic stay, citing, among others, In re Calder (C.A. 10, 1990), 907 F.2d 953. Easley, supra, at 910-911. We find neither of these reasons provides a sufficient basis for holding that actions taken in violation of the stay should be treated as voidable rather than void.
As noted in one treatise:
 The better approach is to view the annulment option as a means of avoiding the effect of the stay, rather than as an indication that acts taken in violation are voidable. If such acts were merely voidable, then the debtor would have the obligation to avoid acts taken in violation. In view of the importance of the stay, it is preferable to treat any such acts as void and of no effect, subject to being given effect by annulment or modification of the stay.
Collier on Bankruptcy, supra. (Footnotes omitted.)
Additionally, we conclude that it is generally inappropriate to apply the waiver doctrine to cases like the one before us. For instance, it has been held that a debtor may not voluntarily waive the automatic stay, since the stay serves to protect not just the debtor, but his creditors as well. Commerzanstalt v. TelewideSystems, Inc. (C.A. 2, 1986), 790 F.2d 206, 207. For that same reason, the waiver doctrine generally should not be applied in cases where, as here, the debtor fails to timely raise the automatic stay as a temporary bar to an action brought against him. In other words, since the protections afforded by the automatic stay are not for the debtor's benefit alone, the debtor cannot be permitted to waive the stay voluntarily, nor should he be deemed to have waived the stay by not raising it in a timely manner.
While we do not rule out the possibility of recognizing an equitable exception to the automatic stay in circumstances where it would be manifestly unjust not to do so, see, e.g., Matthews v.Rosene (C.A. 7, 1984), 739 F.2d 249, we agree that the better view is to treat acts taken in violation of the automatic stay as void rather than simply voidable, regardless of whether the actor has notice of the stay. See In re Soares (C.A. 1, 1997),107 F.3d 969, 976; and In re Schwartz (C.A. 9, 1992), 954 F.2d 569,571-572 (holding that actions taken in violation of the stay are void and not simply voidable, given the important purposes served by the stay). The essential principle, as we understand it, is that the pendency of bankruptcy proceedings establishes preemptive federal jurisdiction, to the exclusion of state court jurisdiction, over the adjudication of pre-petition claims until such time as the bankruptcy proceedings are concluded without adjudicating the claim, or until such time as the bankruptcy court releases the claim from the effect of the automatic stay through a relief from stay order. To hold that a state court judgment rendered during the pendency of an automatic stay order is merely voidable, rather than void, would defeat that scheme, because the state court judgment, being merely voidable, would be entitled tores judicata, with the result that the bankruptcy court would have to defer to that adjudication of the pre-petition claim, even though the bankruptcy court never determined, in the exercise of its discretion, to relinquish jurisdiction over that claim.
Finally, in a case similar to this one, the Third Appellate District has also concluded that a judgment rendered in an action brought in violation of the automatic stay is void, although that court did not discuss the split of authority that exists on the void\voidable issue. See Hershberger v. Morgan (1996),112 Ohio App.3d 105.
In light of the foregoing, we hold that the judgment of the trial court is void and must be reversed and vacated. Of course, the Curtises may seek relief from the automatic stay in bankruptcy court pursuant to Section 362(d), Title 11, U.S. Code, if they are so inclined.
The Paytons' First Assignment of Error is sustained.
 III
The Paytons' Second Assignment of Error states:
 THE COURT ERRED IN GRANTING JUDGMENT SINCE ANY DAMAGE CREATED DURING THE APPELLANT'S TENANCY WAS A RESULT OF ORDINARY WEAR AND TEAR WHICH IS THE RESPONSIBILITY OF THE LANDLORD.
This assignment of error has been rendered moot by our disposition of the Paytons' First Assignment of Error. See App.R. 12(A)(1)(c).
 IV
The Paytons' First Assignment of Error having been sustained, the judgment of the trial court is Reversed and Vacated.
WOLFF and YOUNG, JJ., concur.
Copies mailed to:
Paul Curtis
Cynthia A. Lennon
Hon. Susan L. Goldie
[1] The trial court arrived at the $881.31 figure by adding to the total amount of damages to the premises, the amounts owed for the December rent and late fee, and subtracting the amount of the Paytons' security deposit that had been retained by the Curtises.