In re Alison BRIGHT, Debtor.

Alison Bright, Appellant,

v.

Washington Mutual Bank, F.A., and
Doreen Solomon, Chapter 13
Trustee, Appellees.

BAP No. MB 05–043.
Bankruptcy No. 97–18406–WCH.

United States Bankruptcy Appellate Panel
of the First Circuit.

Feb. 23, 2006.

Martha M. Wishart, Esq., on brief for Appellant.

Joseph G. Butler, Esq., Kevin P. Scanlon, Esq. and Roger T. Manwaring, Esq., on brief for Appellee, Washington Mutual Bank, F.A.

Before VOTOLATO, HAINES and VAUGHN, United States Bankruptcy Appellate Panel Judges.

VOTOLATO, Bankruptcy Judge.

This is an appeal of a bankruptcy court order annulling the automatic stay and validating a foreclosure sale by HomeSide Lending, Inc., predecessor-in-interest of the appellee, Washington Mutual Bank, F.A. ("HomeSide"), of real estate co-owned by the appellant, Alison C. Bright ("Debtor"). For the reasons set forth below, we affirm the order of the bankruptcy court.

## BACKGROUND

In 1986, the Debtor and Ajibola Osinubi purchased real property located at 35 Abbotsford Street, Roxbury, Massachusetts ("Property"). The Debtor and Osinubi executed a mortgage which secured a note signed only by Osinubi.

In September, 1997, the Debtor filed a Chapter 13 petition, schedules, statement of financial affairs and a Chapter 13 plan. In her schedules, the Debtor identified her primary residence as 4 Murray Avenue, Roxbury, Massachusetts, and listed mortgages to HomeSide and Monarch Savings Bank relating to the Murray Avenue property. The Debtor did not disclose her

ownership interest in the Abbotsford Street Property in any of her bankruptcy filings. Her Chapter 13 plan was confirmed in November, 1997.

In June, 2002, due to non-payment, the note and mortgage on the Abbotsford Street Property went into default and a demand notice was sent by certified mail and regular first class mail to the Debtor at P.O. Box 2718, Boston, Massachusetts.[1] Later that month, HomeSide filed a foreclosure complaint against Osinubi and the Debtor in state court. The Land Court issued an Order of Notice which was served upon the Debtor by the Suffolk County Sheriff by leaving a copy of the Order at the Property and by mailing a copy of the Order via first class mail to the Debtor at the Property address. The Order of Notice was recorded in the Suffolk County Registry of Deeds on July 10, 2002, and published in the Boston Herald on July 13, 2002.

On July 10, 2002, deficiency notices were mailed by certified mail and regular mail to the Debtor at the Property address and at P.O. Box 2718, Boston, Massachusetts. Notice of the foreclosure sale was published in the Boston Herald on three successive weeks beginning July 13th. The parties stipulate that at no time prior to the sale of the Property did the Debtor respond to these notices or notify HomeSide or its counsel that the Debtor was in bankruptcy.

In August, 2002, the Property was sold at auction for $240,000 to an unrelated third party, who in turn resold it. The auction sale produced a surplus of $140,766.68. In January, 2003, HomeSide filed an interpleader action in the state

court to determine ownership rights in the surplus sale proceeds. Unlike her claim of not receiving prior notices, the Debtor had no problem learning of the existence of surplus sale proceeds, and promptly filed a pro se answer in which she asserted a claim to half of the funds. She did not notify the Chapter 13 Trustee or the bankruptcy court that she claimed an interest in the surplus sale proceeds.[2]

In July, 2003, the state court issued an order directing $139,367 to be paid to the Debtor's attorney, Daniel McKenzie, to be held in escrow. On July 10, 2003, as the Debtor's plan had been completed, and unaware of any surplus funds or the interpleader action, the Chapter 13 Trustee filed her final report, account, and request for discharge. On the same date, the bankruptcy court discharged the Trustee and closed the case. McKenzie received the funds in question shortly thereafter.

Almost two years after the commencement of the interpleader action, McKenzie filed an answer and counterclaim on the Debtor's behalf, alleging that HomeSide violated the automatic stay and that the foreclosure sale was void. In response, HomeSide requested and obtained an order reopening the Debtor's bankruptcy case, and also filed a motion for retroactive relief from, or an annulment of, the automatic stay in order to validate the foreclosure and subsequent sale of the Property. The Debtor filed an opposition, and the bankruptcy court scheduled a hearing. Within the same time frame, the bankruptcy court granted the Chapter 13 Trustee's motion for turnover of $16,952.62 to the estate from the escrowed funds, a sum sufficient to pay a 100% dividend to all

---

1. The Debtor testified in the bankruptcy court that there was a post office box associated with the Property, but that she did not have access to it.

2. The Debtor did, however, reference her bankruptcy case in her answer to the interpleader.

creditors who had filed proofs of claim in this case.

In July, 2005, the bankruptcy court held an evidentiary hearing on HomeSide's motion for annulment of the automatic stay, and, on August 29, 2005, entered an order and decision granting the motion to annul the automatic stay, and validating the sale of the Property. The Debtor filed a timely Notice of Appeal.

## JURISDICTION

■■■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment,'" while an interlocutory order "'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* at 646 (quoting *In re American Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.,* 226 B.R. 724 (1st Cir. BAP 1998). A bankruptcy court's order granting retroactive relief from the automatic stay is a final order. *See Tringali v. Hathaway Mach. Co.,* 796 F.2d 553, 558 (1st Cir.1986).

## STANDARD OF REVIEW

■■■ Appellate courts generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. Del-Bonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). We review the bankruptcy court's decision to annul the automatic stay for abuse of discretion. *See Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 973 n. 4 (1st Cir.1997) (citing *Tringali,* 796 F.2d at 561). A bankruptcy court abuses its discretion if it ignores "a material factor deserving of significant weight," relies upon "an improper factor" or makes "a serious mistake in weighing proper factors." *Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988).

## DISCUSSION

### I. The Automatic Stay

■■■ Section 362(a)(1) of the Bankruptcy Code[3] provides that the filing of a bankruptcy petition automatically stays all post-petition acts against a debtor and property of the debtor's estate, subject to limited exceptions. The automatic stay provides a debtor with one of the fundamental protections under federal bankruptcy law—it gives debtors "breathing room" from the pressures of their creditors. *See Soares,* 107 F.3d at 975. Section 362(a)(3) expressly prohibits any post-petition actions by creditors "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and during the operation of the stay, if a party in interest wishes to enforce a claim or lien against property of the estate it must obtain relief

**3.** All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, *et seq.*

from the stay from the bankruptcy court. 11 U.S.C. § 362(d). Quite clearly, Home-Side violated the automatic stay by foreclosing on property co-owned by a debtor in bankruptcy without obtaining relief from the automatic stay.

## II. Retroactive Relief from Stay

■■■■■ It is well settled in this circuit that actions taken in violation of the automatic stay are void and without legal effect.[4] *See Soares,* 107 F.3d at 976 (actions taken in violation of the automatic stay are void, unless there are equitable considerations); *see also Mann v. Chase Manhattan Mortgage Corp.,* 316 F.3d 1, 3 (1st Cir.2003); *ICC v. Holmes Transp., Inc.,* 931 F.2d 984, 987–88 (1st Cir.1991) ("Judicial actions and proceedings, as well as extrajudicial acts, in violation of the automatic stay, are generally void and without legal effect unless countenanced by the court in which the [bankruptcy] petition is pending"); *In re Smith Corset Shops, Inc.,* 696 F.2d 971, 978 (1st Cir.1982). The First Circuit Court of Appeals has recognized that bankruptcy courts are authorized to annul the automatic stay retroactively, when equitable considerations warrant, to validate actions which otherwise would be void. *See Soares,* 107 F.3d at 975–76. Because the stay operates as a "fundamental protection for all parties affected by the filing of a petition in bankruptcy," retroactive relief is an extraordinary measure and the circumstances that justify it are likely to be "far and few between." *Id.* at 977. Accordingly, it is the offending creditor's burden to demonstrate that its void actions should be validated "after the fact." *Id.* at 976. This "best harmonizes with the nature of the automatic stay and the important pur-

poses that it serves." *Id.* Therefore, when a creditor seeks post facto annulment of the stay, it must show extreme circumstances, with facts both "unusual" and "unusually compelling." *Id.* at 977.

■■■■ In *Soares,* the First Circuit provided two specific examples of "unusual and unusually compelling" circumstances in which a court may exercise its limited discretion to grant retroactive relief: (1) where a creditor inadvertently violated the automatic stay because it lacked knowledge of the bankruptcy, or (2) where a debtor acted in bad faith. *Id.* These are but two examples of when cause may exist for retroactive relief, and the bankruptcy court may consider other equitable factors in its determination. *See id.* ("We do not suggest that we can write a standard that lends itself to mechanical application. Each case is sui generis and must be judged accordingly ... These examples ... clearly do not exhaust the possibilities."). With these considerations in mind, we must determine whether the bankruptcy court abused its discretion in ruling that there were "unusual and unusually compelling" circumstances warranting retroactive annulment of the automatic stay.

## III. "Unusual and Unusually Compelling" Circumstances

### A. Debtor's bad faith

■■■■ In deciding whether to retroactively annul the automatic stay, bankruptcy courts are especially concerned with allegations of bad faith. *See Soares,* 107 F.3d at 977 (recognizing that debtors who act in bad faith "create situations that are ripe for retroactive relief."). The bank-

---

4. Although the First Circuit Court of Appeals has held that actions which violate the automatic stay are void, other courts have concluded that such actions are merely voidable,

and capable of discretionary cure. *See, e.g., Sikes v. Global Marine, Inc.,* 881 F.2d 176, 179 (5th Cir.1989).

ruptcy court considered the Debtor's bad faith in failing to disclose her ownership interest in the Property, and was unconvinced by the Debtor's argument that she should not be penalized for the omission because "it was her attorney's fault." On appeal, the Debtor argues that the bankruptcy judge placed undue weight on her failure to include the Property in her schedules, and that since the omission was "neither knowing or fraudulent, it should not be weighed against her."

■■■ We agree with the bankruptcy court's conclusions and the weight given to the evidence, i.e.: (1) the Debtor's failure to disclose her ownership interest in the Property in her bankruptcy filings, (2) the Debtor's failure to inform the bankruptcy court and the Chapter 13 Trustee of her claim to the sale proceeds, and (3) the Debtor's long delay in invoking the automatic stay. The Panel sees no error in the bankruptcy court's critical scrutiny of the Debtor's conduct.

### 1. Failure to disclose ownership interest in Property

■■ The Bankruptcy Code and Rules require that the information supplied in bankruptcy filings be true and correct. Debtors sign declarations under penalty of perjury, and the integrity of the system depends upon adherence to those principles. *See, e.g., In re Eatman,* 182 B.R. 386, 392–93 (Bankr.S.D.N.Y.1995) (petition and schedules "riddled with material misstatements, inconsistencies and omissions" were filed in bad faith, and, therefore, cause to lift stay existed). The Debtor claims that she first consulted a bankruptcy attorney long before the filing, that she told him of her ownership interest in the Property, and signed schedules in blank. The Debtor thought that her petition

would be filed soon thereafter, but her attorney did not file the petition for more than eight months. When she inquired of her attorney about her case, he lied to her about filing the petition and gave her a "bogus [bankruptcy case] number" to give to creditors.[5]

The Debtor also argues that she did not have an opportunity to review or comment on her bankruptcy papers before they were filed, and that she saw the completed schedules for the first time at the § 341 meeting of creditors. Although she testified under oath at her § 341 meeting that she had reviewed the papers filed in her case and that they were "accurate to the best of her knowledge," the Debtor now asserts that this affirmation was limited to confirmation of her signature, and not as to a careful review of the Schedules to confirm their accuracy. It is undisputed, however, that even after learning that her attorney had repeatedly misinformed her, he continued to represent her. At no time did the Debtor attempt to review the documents filed on her behalf. Assuming the Debtor never saw her completed schedules prior to the filing, she was confronted with the complete file at the § 341 meeting of creditors, and could have reviewed the papers at that time or requested additional time to confirm their accuracy. Had she done so, she should have noticed the omission in question and could have made the appropriate amendments.

Assuming arguendo that the Debtor did in fact inform her counsel of her interest in the Property, and that he failed to include it in the schedules, she bears the burden of that error and her choice of an attorney. *See Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (concluding that "Petitioner volun-

**5.** While the Debtor's bankruptcy case was pending, her attorney was suspended from the practice of law and ultimately disbarred, for reasons not connected with the Debtor.

tarily chose this attorney as his representative in the action and he cannot now avoid the consequences of the acts or omissions of this freely selected agent"). This circuit, following *Link,* has turned a "deaf ear" to the plea that "the sins of the attorney should not be visited upon the client." *Damiani v. Rhode Island Hosp.,* 704 F.2d 12, 17 (1st Cir.1983); *see also KPS & Assocs. v. Designs by FMC, Inc.,* 318 F.3d 1, 16 (1st Cir.2003); *Farm Constr. Servs., Inc. v. Fudge,* 831 F.2d 18, 21 (1st Cir.1987).

### 2. Actions during state court proceeding

Moreover, the Debtor's actions during the state court interpleader action received, in our view, appropriate scrutiny by the bankruptcy judge. The parties stipulate that the first time the Debtor learned about the foreclosure sale of the Property was in February 2003, when she was served with the summons and interpleader complaint. Although the Debtor immediately asserted her claim to a portion of the surplus funds generated by the foreclosure sale, she failed to notify the bankruptcy court or the Chapter 13 Trustee of her claims. Nor did she invoke the automatic stay or make any allegation of damage resulting from the stay violation for almost two years, when she finally filed a counterclaim in the interpleader action. Even then, the Debtor did not move to reopen her bankruptcy case to pursue the stay violation or to seek damages. Although these factors may not be dispositive, cumulatively they weigh heavily in favor of the bankruptcy court's decision to annul the automatic stay. *See Gruenbaum v. Bankers Trust Co. (In re Goldstein),* 5 Fed.Appx. 757, 760 (9th Cir.2001) (recognizing that timing of debtors' reliance on automatic stay is "telling"); *Job v. Calder (In re Calder),* 907 F.2d 953, 956–57 (10th Cir.1990) (debtors "must bear some re-

sponsibility for [the] unreasonable delay in asserting [their] rights under § 362(a)," and automatic stay may not "be used as a trump card played after an unfavorable result was reached in state court...."); *In re Smith,* 876 F.2d 524 (6th Cir.1989) (debtor may not remain "stealthily silent" about the automatic stay in order to reap strategic or monetary advantage). The ring of truth (or falsity) is sounded most audibly before the trier of fact, and this Panel sees no error in the bankruptcy judge's skepticism of the Debtor's testimony, or his finding that the Debtor acted in bad faith.

### B. Intervening Rights of Third Party Purchasers

The bankruptcy court also considered general equitable considerations regarding the subsequent good faith purchasers of the Property. Recognizing that the Property had been sold to a third party, who then sold it to a fourth party, the bankruptcy court determined that the automatic stay should be annulled (and the sale validated) in order to protect those innocent parties.

In appropriate circumstances, intervention of the rights of innocent third parties may warrant the granting of retroactive relief, *see In re Batton,* 308 B.R. 406, 414–15 (Bankr.W.D.Mo.2004), and there is no suggestion that the purchaser of the Property was not acting in good faith or with knowledge of the Debtor's bankruptcy prior to the foreclosure sale. Moreover, the purchaser then sold the Property to yet another innocent purchaser. Undoubtedly, if the bankruptcy court chose to enforce the stay, these subsequent purchasers would be detrimentally affected, and their intervening rights clearly weigh in favor of granting of retroactive relief from the automatic stay. *See*

*id.; see also Jones v. Garcia (In re Jones),* 63 F.3d 411 (5th Cir.1995) (affirming bankruptcy court judgment that modified automatic stay to retroactively validate purchase of property at foreclosure by appellee creditors without notice of bankruptcy filing); *In re Bago,* 149 B.R. 610 (Bankr.C.D.Cal.1993) (granting annulment of automatic stay because movant, having no knowledge of bankruptcy, was good faith purchaser and price paid at foreclosure sale constituted "present fair equivalent value"). The bankruptcy court did not err in considering general equitable considerations regarding the rights of the subsequent good faith purchasers of the Property.

### C. HomeSide's lack of knowledge

█ Notwithstanding the above factors, the Debtor contends that HomeSide was not entitled to retroactive relief because it had notice of the bankruptcy filing, and any ignorance claimed by HomeSide was its own fault. The bankruptcy court considered this issue and determined that HomeSide had sufficient notice or means to be informed of the bankruptcy, and, therefore, was not entitled to retroactive relief under *Soares* due to lack of notice. Although HomeSide's lack of knowledge was not a sufficient reason to retroactively lift the stay, the Debtor's overriding bad faith and the intervening rights of third parties were compelling circumstances warranting retroactive relief. Although HomeSide's alleged lack of notice of the Debtor's bankruptcy filing was due to the inadequacy of its own record keeping and search procedures, the notice issue is not sufficient to outweigh the relief granted in light of the other compelling circumstances.

### *CONCLUSION*

For the reasons set forth above, we conclude that the bankruptcy court did not abuse its discretion in determining that there were "unusual and unusually compelling" circumstances warranting retroactive annulment of the automatic stay. Accordingly, the bankruptcy court's decision is **AFFIRMED.**