# CIRCUIT COURT OF THE CITY OF NORFOLK

Jennifer Hartley

v.

Mark Hartley

## Case No. (Civil) CL08-2443-03

BY JUDGE DAVID W. LANNETTI

### October 9, 2015

Today the Court rules on the Order To Show Cause entered by the Court pursuant to the petition filed by the Plaintiff, Jennifer Hartley. The specific issue before the Court is whether the Defendant, Mark Hartley, willfully failed to comply with the Court's Order to make payments, representing proceeds from the sale of real property, to Jennifer Hartley as required by the stipulation agreement executed by the parties and incorporated into their final decree of divorce.

The Court finds Mark Hartley in contempt of court for willfully failing to comply with the final decree of divorce and orders him to pay Jennifer Hartley $190,900 plus interest, as well as the costs and reasonable attorney's fees associated with this show cause proceeding. The Court further orders Mark Hartley to show cause why he should not be held in contempt of court for failing to comply with the Court's Order to appear in court on August 25, 2015.

278

*Background*

Mark Hartley ("Husband") and Jennifer Hartley ("Wife") were divorced on June 9, 2008. On November 21, 2007, prior to the Court entering the final decree of divorce ("Final Divorce Decree"), the parties entered into an agreement entitled "Stipulation and Agreement Pursuant to Title 20, §§ 109 and 109.1 of the Code of Virginia of 1950, as Amended" (the "Stipulation Agreement"). The Stipulation Agreement addressed, among other things, disposition of marital assets, including real property located at 3912 Shady Oaks Drive, Virginia Beach, Virginia ("Shady Oaks") and real property "within Dey Street Associates" (the "Dey Street Properties"). The Stipulation Agreement was incorporated into the Final Divorce Decree, which ordered the parties to comply with the terms of the Stipulation Agreement.

The Stipulation Agreement addresses the parties' rights and obligations regarding Shady Oaks and the Dey Street Properties. Paragraph 13(b) provides as follows:

> The parties shall apply any and all remaining proceeds from the sale of the Dey Street [P]roperties toward the principal balance of the mortgage obligations on Shady Oaks. . . . If the mortgages are satisfied prior to the sale of Shady Oaks, the parties will divide equally any and all proceeds from the sale of Dey Street [P]roperties.

(Pl.'s Ex. 1, at 5-6.) Paragraph 33(a) of the Stipulation Agreement, which addresses "Costs of Enforcement," provides that "[a]ny costs, including, but not limited to counsel fees, Court costs, investigation fees, and travel expenses, incurred by a party in the successful enforcement of any of the . . . provisions of this Agreement . . . shall be borne by the defaulting party." (Pl.'s Ex. 1, at 12.)

At the August 25, 2015, hearing on the Order To Show Cause, Wife presented statements of Schedule K-1 distributions made to Husband in 2007, 2008, 2009, and 2011, which collectively represent the marital portion of the proceeds from the sale of the Dey Street Properties. (Pl.'s Exs. 5-7, 9.) The parties stipulated to the related exhibits. Husband never produced a copy of the Schedule K-1 for 2010. Wife has accepted Husband's representations that there were no distributions received in 2010 and, therefore, makes no related claim. (Tr. 16, 21.) Wife argued that, pursuant to Paragraph 13(b) of the Stipulation Agreement, she is entitled to half of these distributions. She testified that, although she received two payments from Husband related to the Dey Street Properties, a check dated October 1, 2009, in the amount of $25,000 and an additional payment of $13,600, she has not received any other payments. During Wife's cross-examination, Husband's attorney introduced an email (the "Email") that

Husband allegedly sent to Wife on February 23, 2010, with the subject line "Dey Street Disbursements to Jenny 07 thru Jan. 2010." (Def.'s Ex. 1.) The Email purports to outline payments Husband made to Wife, including the two Wife testified about, totaling $154,224.

Despite the Email title, at least one payment on its face does not appear to relate to the Dey Street Properties. It references "patriot [sic] $$$$ to jenny," which apparently relates to the parties' interest in Patriot Computers and is addressed by another paragraph of the Stipulation Agreement. (*See* Pl.'s Ex. 1, at 3-4; *see also* Pl.'s Ex. 4 (outlining Wife's arguments why other listed payments are not related to the Dey Street Properties).)

The August 25, 2015, hearing was scheduled by the Court on July 22, 2015. Husband appeared by counsel on July 22, and the Court's Order entered that day expressly states that Husband "need not be served with additional process." Husband did not appear at the August 25 hearing. There, Husband's counsel stated to the Court that he had notified Husband of the hearing on June 22 when it was set and that he had spoken to Husband the previous day, when Husband told him that he would not be present at the hearing. (Tr. 4, 7.)

## Positions of the Parties

### A. *Wife's Position*

Wife argues that the Court should find Husband in contempt of court because he willfully violated the Court's Order to pay her, in accordance with the Stipulation Agreement, 50% of the distributions received from the sale of the Dey Street Properties, which totaled $229,500. Wife contends that Husband paid her only $38,600 and that she, therefore, is entitled to the difference of $190,900, plus costs, interest, and attorney's fees. In response to Husband's assertion that satisfaction of the Shady Oaks mortgages was a condition precedent to his incurring an obligation to pay her any Dey Street Properties distributions, Wife contends that Husband's admission that he made several such payments to her demonstrates that either there was no condition precedent or Husband waived the condition.

Wife also requests that the Court issue a *capias* on Husband based on his failure to appear at the August 25, 2015, hearing to respond to the Court's Order To Show Cause.

### B. *Husband's Position*

Husband contends that, pursuant to the express language of the Stipulation Agreement, he is not required to pay Wife half of the Dey Street Properties distributions and that he, therefore, cannot be found in contempt of court for failing to comply with the Final Divorce Decree. Husband maintains that the Stipulation Agreement only requires equal division of the Dey Street

Properties distributions *if* "the [Shady Oaks] mortgages are satisfied prior to the [sale] of Shady Oaks." Husband asserts that, because the Shady Oaks mortgages were not satisfied when the Dey Street Properties were sold, the necessary condition precedent was not met, and his obligation to pay any portion of the distributions to Wife never arose.

Husband alternatively argues that, if the Stipulation Agreement requires him to pay half of the Dey Street Properties distributions to Wife, she failed to prove that he did not satisfy that obligation. In support of his argument, Husband notes in his brief that Wife "is a very poor historian" with a conflicting memory of what occurred. Husband further argues that, even had Wife proven he was obligated to pay half of the distributions to her, she failed to meet her burden of proving the amount he owes her.

*Analysis*

A. *Legal Standard*

Contempt proceedings fall into two general categories—those prosecuted "to preserve the power and to vindicate the dignity of the court" and those instituted "to preserve and enforce the rights of private parties." *Leisge v. Leisge*, 224 Va. 303, 307, 296 S.E.2d 538, 540 (1982) (quoting *Steelworkers v. Newport News Shipbuilding*, 220 Va. 547, 549-50, 260 S.E.2d 222, 224 (1979)). The former are criminal and punitive in nature; the latter are civil and remedial. *Drake v. National Bank of Commerce*, 168 Va. 230, 239, 190 S.E. 302, 306 (1937).

In civil contempt proceedings, a court may impose sanctions either to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy. *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947). "In appropriate cases the violator may be punished by . . . an award of damages against him in favor of the injured party sufficient to indemnify him for the pecuniary loss occasioned to him as a result of the act or omission which violated the [court order] having injured or damaged property or rights which he was entitled to have protected or preserved by the [court order]." *Leisge*, 224 Va. at 308, 296 S.E.2d at 540-41 (1982) (quoting *Deeds v. Gilmer*, 162 Va. 157, 262, 174 S.E. 37, 78-79 (1934)).

With respect to equitable distribution in divorce actions, the Code of Virginia provides as follows: "The court shall have the *continuing authority* and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to . . . *[p]unish as contempt of court* any willful failure of a party to comply with the provisions of any order made by the court under this section." Va. Code Ann. § 20-107.3(K) (2005) (emphasis added). When the court incorporates an agreement into a final divorce decree, it, therefore, can use

its contempt power to enforce the terms of that agreement. *Id.* § 20-109.1; *Owney v. Owney*, 8 Va. App. 255, 259, 379 S.E.2d 745, 748 (1989). For an alleged contemnor to be held in contempt for violation of an order in a divorce decree, it must be shown that he or she acted in bad faith or willfully disobeyed the court order. *Alexander v. Alexander*, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991). In a show cause hearing, the moving party need only prove that the offending party failed to comply with an order of the trial court; the offending party then has the burden of proving justification for his or her failure to comply. *Id.*

There are apparently no Virginia appellate cases addressing the burden of proving civil contempt. When Virginia law is silent on a matter, courts have looked to federal law for guidance. *See, e.g., Elizabeth River Crossings OpCo, L.L.C. v. Meeks*, 286 Va. 286, 309, n. 4, 749 S.E.2d 176, 187, n. 4 (2013). The U.S. Court of Appeals for the Fourth Circuit has held that the burden of proving civil contempt is on the moving party by clear and convincing evidence. *In re GMC*, 110 F.3d 1003, 1018 (4th Cir. 1997). The movant's burden of proving the related compensatory damages, on the other hand, is by a preponderance of the evidence. *Id.*

The "issue whether [prejudgment] interest should be awarded, and from what date any interest should run, is a matter submitted to the sound discretion of the trial court." *Advanced Marine Enters. v. PRC, Inc.*, 256 Va. 106, 126, 501 S.E.2d 148, 160 (1998) (citing, *inter alia*, Va. Code § 8.01-382). Prejudgment interest normally is not awarded for unliquidated damages. *Id.*

B. *Discussion*

The Court has considered the pleadings, oral argument at the August 25, 2015, hearing, and applicable authorities.

1. *The Stipulation Agreement Requires Husband and Wife To Satisfy the Shady Oaks Mortgages and Then Equally Divide the Proceeds from the Sale of the Dey Street Properties*

In Virginia, domestic relations agreements such as the Stipulation Agreement are contracts, subject to the same rules of construction and interpretation as other contracts. *Pellegrin v. Pellegrin*, 31 Va. App. 753, 763, 525 S.E.2d 611, 616 (2000). When interpreting such contracts, courts have held:

> [W]hat is necessarily implied is as much a part of the instrument as if plainly expressed, and will be enforced as such. If the language of the instrument leaves the meaning of the parties in doubt, the court will take into consideration the occasion that gave rise to it, the obvious design of the parties, and the object to be attained, as well as the language of the instrument to give

effect to that construction which will effectuate the real intent and meaning of the parties.

*Id.* at 759, 525 S.E.2d at 614.

Husband asserts that, based on paragraph 13(b) of the Stipulation Agreement, Wife is not entitled to any Dey Street Properties distributions because a necessary condition precedent was not satisfied. The relevant paragraph provides that, "*[i]f the [Shady Oaks] mortgages are satisfied prior to the sale of Shady Oaks*, the parties will divide equally any and all proceeds from the sale of Dey Street [P]roperties." (Pl.'s Ex. 5 (emphasis added).) Husband claims that, because the mortgages were not satisfied prior to the sale of Shady Oaks, Wife is not entitled to any of the Dey Street Properties distributions.

The intent of the Stipulation Agreement regarding marital property is that the parties would mutually satisfy any related debt and then split any net profits, which is consistent with the purpose of the Stipulation Agreement as a whole. The Settlement Agreement defines "marital property" as Shady Oaks and the Dey Street Properties. (Pl.'s Ex. 1, at 5-6.)

> [I]t is well settled that the whole instrument is to be considered, and not one provision only, in determining the meaning of any and all its parts; not the words merely in which the provisions are expressed but their object and purpose, as disclosed by the language, by the subject matter, the condition and situation of the parties. Consideration must be given to the general circumstances surrounding or attending its execution, and effect given to each provision, if possible.

*Carpenter v. Gate City*, 185 Va. 734, 740-41, 40 S.E.2d 268, 271 (1946).

At the time the parties executed the Stipulation Agreement, the Shady Oaks mortgages totaled approximately $300,000. The parties anticipated that proceeds from the sale of the Dey Street Properties first would be used to satisfy the Shady Oaks mortgages to reduce joint marital debt on Shady Oaks. If those mortgages were satisfied prior to the sale of Shady Oaks, then the parties would equally divide any net proceeds from the sale of the Dey Street Properties.

Of note, paragraph 13 of the Stipulation Agreement also provides that "the parties will share any and all expenses equally for the Shady Oaks property" and that "the proceeds from [the sale of] Shady Oaks, if any, shall be divided equally between the parties" after Husband has been reimbursed his $30,000 equity interest in the marital residence. (Pl.'s Ex. 1, at 6.) It is not clear whether this provision of the Stipulation Agreement was amended; an "Addendum" purporting to delete the equity interest reimbursement and essentially provide for an equal distribution of the sales proceeds apparently

was signed *only* by Husband *after* Shady Oaks was sold. (See Pl.'s Ex. 4.) The Court need not resolve this issue for purposes of this Opinion.

Wife likewise testified that her understanding of the Stipulation Agreement was that the parties would equally divide the net proceeds from the Dey Street Properties. (Tr. 43.)

Significantly, nothing in the Stipulation Agreement provides for Husband to receive distributions from the Dey Street Properties without Wife receiving an equal amount. Husband nevertheless implicitly asserts that he is entitled to do just that. No evidence was presented regarding why or how Husband unilaterally received Dey Street Properties distributions, but, upon receipt of such funds, he was obligated, under the express language of the Stipulation Agreement, to either make payments on the Shady Oaks mortgages or, if the Shady Oaks mortgages were satisfied, pay half of the distributions to Wife. Stated differently, both Husband and Wife were to benefit equally under either scenario, through either a reduction in joint debt or receipt of equal payments. Husband instead elected to retain the distributions for himself. According to the Schedule K-1 statements, the distributions Husband received were made payable to "Dey Street Properties, L.L.C." and forwarded him. (Pl.'s Exs. 5-7, 9.) Counsel represented at the August 25, 2015, hearing that Husband was one of three members of the LLC that owned the properties. (Tr. 21.)

It also is not clear why Husband, once he received the Dey Street Properties distributions, did not use them to satisfy the Shady Oaks mortgages. The Shady Oaks mortgages were not satisfied when the Dey Street Properties distributions were made, but rather were satisfied when Shady Oaks subsequently was sold on September 9, 2011. (*See* Pl.'s Ex. 4; Tr. 33-34.) Ironically, despite his own failure to use the distributions he received to satisfy the Shady Oaks mortgages, Husband argues that *Wife* breached the Stipulation Agreement by not using the distributions she received — from Husband — to satisfy the mortgages. (Def.'s Br. 2-3.) Based on principles of waiver, estoppel, and unclean hands, the Court does not find Husband's argument persuasive. Husband's condition-precedent argument is contrary to the purpose of .the Stipulation Agreement, to benefit the parties equally. Husband argues that Wife is not entitled to a portion of the Dey Street Properties distributions until satisfaction of the condition precedent, but, pursuant to the express language of the Stipulation Agreement, any distributions *to him* also are predicated upon the condition precedent. Husband, therefore, had no right to retain the distributions solely for himself.

Based on the language and clear intent of the Stipulation Agreement, as well as Wife's unrebutted testimony, the Court finds that the parties intended to use any Dey Street Properties sales proceeds to satisfy the Shady Oaks mortgages and then equally divide any remaining proceeds. Because Husband retained the proceeds and the mortgages now have been

satisfied, the Court finds that the Dey Street Properties distributions must be equally divided between the parties.

### 2. *Husband Violated the Terms of the Stipulation Agreement by Failing To Pay Wife Her Equal Share of the Dey Street Properties Distributions*

· When acting as the trier of fact, "the trial court . . . must evaluate the credibility of the witnesses, resolve the conflicts in their testimony, and weigh the evidence as a whole." *Witt v. Commonwealth*, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975). At the August 25, 2015, hearing, Wife testified that she had not received any proceeds related to the sale of the Dey Street Properties other than the two stipulated payments totaling $38,600. As noted above, Husband was not present at the August 25, 2015, hearing. The only evidence offered to support that he made additional payments to Wife was the February 23, 2010, email, which Wife clearly disputes. (Tr, 49-50; Def. Ex. 1.) Husband was unavailable to testify as to the authenticity or the veracity of the Email, which Wife characterized as self-serving.

The Court finds it noteworthy that the date of the Email, February 23, 2010, was after a previous Decree To Show Cause was entered by this Court on another matter dealing with the Stipulation Agreement.

Of significant note, even had Husband made payments to Wife as indicated in the Email, *and* assuming all of those payments related to distributions from the Dey Street Properties, Husband effectively concedes that he failed to comply with the terms of the Stipulation Agreement. The Email indicates there were $374,923 in Dey Street Properties disbursements, $50,936 in alleged joint expenses, and $154,224 in amounts paid to Wife. The Email summary specifically acknowledges that there is $7,770 "currently owed to [Wife]," and Husband has not alleged that there were any subsequent payments to Wife.

No explanation was offered regarding why Husband's calculations in the Email, indicating $374,923 in "Dey Street disbursements," exceeds the $329,000 in Dey Street Properties disbursements evidenced by the Schedule K-1 statements, although the absence of a 2010 Schedule K-1 statement could provide an explanation.

Based on the totality of the evidence presented to the Court at the August 25, 2015, hearing and the briefs filed by the parties, the Court finds that Husband violated the terms of the Stipulation Agreement by failing to pay Wife her equal share of the proceeds from the sale of the Dey Street Properties.

Although not alleged, Husband also violated the terms of the Stipulation Agreement by failing to satisfy the Shady Oaks mortgages prior to retaining Dey Street Properties distributions for himself.

### 3. *Wife Is Entitled to an Additional $190,900 in Dey Street Properties Distributions, Plus Interest, Costs, and Reasonable Attorney's Fees*

The Schedule K-1 statements demonstrate that the Dey Street Properties distributions to Husband between 2007 and 2011 total $459,000. The Court has already found that Husband was obligated to pay Wife half of the Dey Street Properties distributions and that Husband failed to pay Wife the full amount to which she is entitled. The Court further finds that Wife is entitled to 50% of the Dey Street Properties distributions Husband actually received, less the amounts already received by Wife, plus costs, interest, and reasonable attorney's fees.

The Dey Street Properties distributions at issue total $459,000. Wife, therefore, is entitled to receive $229,500, or 50% of those distributions, from Husband. Although Husband argues that the Email provides evidence of payments in addition to those stipulated to by the parties, the Court places little weight on this unverified and self-serving email. The Court finds, based on the totality of the evidence, that, to date, Husband has paid Wife $38,600 from these distributions. Wife therefore is owed an additional $190,900, plus interest. Based on a 6% *per annum* simple interest rate calculated from December 31 of each year a Schedule K-1 distribution was made to Husband, Wife is entitled to $152,808.73 in prejudgment interest as of August 25, 2015. (*See* Pl.'s Ex. 26.) The Court elects to exercise its discretion to award prejudgment interest at the current 6% judgment rate of interest, because the amounts owed were liquidated and known to Husband upon distribution each year. Va. Code Ann. § 8.01-382 (1950). Because no evidence was offered regarding the exact date of distribution each year, prejudgment interest is granted as of the last day of each year. Wife is also entitled to receive from Husband her costs and reasonable attorney's fees related to briefing, preparing for, and participating in this show cause proceeding, as provided for in Paragraph 33(a) of the Stipulation Agreement. If the parties cannot agree on the amount of the costs and reasonable attorney's fees, Wife shall submit her claim for costs and reasonable attorney's fees to the Court for consideration.

The Court will also entertain within such claim the *additional* reasonable attorney's fees associated with consulting with opposing counsel and preparing such submission should the parties be unable to agree on the amount of the costs and reasonable attorney's fees.

### 4. *Husband Is in Contempt of Court for Willfully Violating the Court's Order To Make Payments to Wife as Required by the Stipulation Agreement*

As discussed *supra*, the Court finds that Husband violated the terms of the Stipulation Agreement by failing to pay Wife her equal share of the Dey Street Properties distributions. Wife, therefore, has proven a *prima*

*facia* case that Husband failed to comply with the Final Divorce Decree. The burden of proving that the noncompliance was other than willful or that Husband was unable to comply with the Court Order then shifted to Husband. "Punishment may not be imposed in a civil contempt proceeding when it is established that the contemnor is unable to comply with the terms of the order." *Estate of Hackler v. Hackler*, 44 Va. App. 51, 72, 602 S.E.2d 426, 436 (2004) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). No evidence was offered that Husband was unable to make payments. Husband failed to satisfy his burden. Assuming without deciding that the appropriate burden of proving civil contempt is clear and convincing evidence, the Court finds that Wife has satisfied her burden. The Court, therefore, finds that Husband willfully failed to comply with the Final Divorce Decree and, by so doing, is in contempt of court.

Husband can purge this finding of contempt by (1) paying to Wife within thirty days $343,708.73 or, alternatively, (2) paying to Wife within thirty days at least $50,000 with future monthly payments of at least $10,000, plus statutory post-judgment interest as of September 9, 2015, with each payment, until the amount owed Wife is paid in full. Should Husband fail to make such payments to purge the contempt, Wife can move the Court to issue a *capias* for Husband's arrest and further sentencing. Husband's obligation to pay costs and reasonable attorney's fees is not affected by this purge clause.

### 5. *Husband Is Required To Show Cause Why He Should Not Be Held in Contempt of Court for Failing To Appear at the August 25, 2015, Hearing*

Husband did not appear at the August 25, 2015, hearing. The Court's July 22, 2015, Order, which scheduled the August 25 hearing, expressly stated that further service of process on Husband was not necessary. Husband's counsel stated to the Court that he notified Husband on July 22 about the August 25 hearing. Husband's counsel also confirmed that Husband was aware of the August 25 hearing, as the two spoke via telephone the day before the scheduled hearing, when Husband made it clear that he would not be present at the hearing.

Husband is ordered to appear *personally* in court and show cause why he should not be held in contempt of court for failing to comply with the Court's June 22, 2015, Order to appear at the August 25, 2015, hearing. Counsel shall coordinate with the Clerk's Office to schedule a show cause hearing to occur within the next sixty days.

### Conclusion

For the foregoing reasons, the Court finds Mark Hartley in contempt of court for failing to comply with the final decree of divorce to make payments to Jennifer Hartley associated with the Dey Street Properties

as required by the parties' stipulation agreement. The Court allows Mark Hartley the opportunity to purge this finding of contempt by complying with the purge provisions enunciated above. The Court further orders Mark Hartley to show cause why he should not be held in contempt of court for failing to comply with the Court's order to appear in court on August 25, 2015.

January 25, 2016

Today, the Court rules on the Motion To Vacate and Motion To Reconsider the Court's October 9, 2015, Order (the "Order") filed by Defendant Mark Hartley. The Order found Mark Hartley in contempt of court for failing to comply with the parties' stipulation agreement, which was incorporated into their final decree of divorce, to make payments to Jennifer Hartley that were associated with the sale of certain real property. Unbeknownst to the Court, Mark Hartley had filed a bankruptcy petition prior the Court's entry of the Order. Jennifer Hartley subsequently had the related automatic stay annulled by the bankruptcy court.

In his Motion To Vacate, Mark Hartley claims that Jennifer Hartley failed to comply with a previous order of the Court, which required her to satisfy certain prerequisites prior to filing a petition to show cause against him. In his Motion To Reconsider, Mark Hartley presents new documents, apparently available but not offered at the August 25, 2015, hearing that led to the Order, and asks the Court to reconsider its ruling based on these documents and related argument. In response to a December 23, 2015, conference call with counsel during which the Court inquired whether the Court had jurisdiction to vacate or reconsider the Order, Mark Hartley filed a Brief Regarding Finality, claiming that: (1) the Order is not a final order; and (2) the twenty-one-day period during which the Court could modify the Order was stayed by his pending bankruptcy proceeding. The Court finds that the Order is a final order and that the Court lacks jurisdiction to vacate or reconsider the Order. The Court, therefore, denies the Motion To Vacate and denies the Motion To Reconsider.

*Background*

Mark Hartley ("Husband") and Jennifer Hartley ("Wife") were divorced on June 9, 2008. On November 21, 2007, prior to the Court's entering the final decree of divorce ("Final Divorce Decree"), the parties entered into an agreement entitled "Stipulation and Agreement Pursuant to Title 20, §§ 109 and 109.1 of the Code of Virginia of 1950, as Amended" (the "Stipulation Agreement"). The Stipulation Agreement addressed, among other things, disposition of marital assets, including certain real property. The Stipulation Agreement was incorporated into the Final Divorce Decree, which ordered the parties to comply with the Stipulation Agreement.

On April 6, 2011, the Court entered a Dismissal Order related to a Show Cause proceeding that ordered, *inter alia*, that, "in the event [Wife] moves to refile a Petition for Show Cause . . . [Wife] will appear with notice to [Husband] before the Court to provide *prima facie* evidence to support her pleadings, prior to the issuance of a Show Cause." (April 6, 2011, Order.)

Wife subsequently filed a Petition for Rule To Show Cause against Husband on November 20, 2014, alleging that Husband did not comply with terms of the Stipulation Agreement related to certain real property. An Order To Show Cause was entered by the Court on November 25, 2014. After multiple discovery disputes and continuances, a hearing (the "Hearing") on the Order to Show Cause was eventually held on August 25, 2015. The Court granted the parties leave to file post-Hearing briefs, and the Court issued a Letter Opinion and accompanying Order on October 9, 2015. Husband elected to file a post-hearing brief; Wife did not.

Without notifying the Court, Husband filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Virginia, Norfolk Division (the "Bankruptcy Court"), on September 24, 2015, which was after the Hearing and prior to entry of the October 9, 2015, Order. The bankruptcy proceeding was converted to a Chapter 7 bankruptcy case on October 19, 2015. The Court was notified of Husband's bankruptcy filing by counsel *for Wife* subsequent to the Court's issuance of its October 9, 2015, Order; Husband never notified the Court — and apparently also did not notify Wife — of his bankruptcy filing prior to Wife's discovery of the filing. On December 8, 2015, counsel for Husband filed a Motion To Vacate and a Motion To Reconsider the Order, stating in a cover letter to the Clerk of Court that he had "confirmed with Mr. Hartley's bankruptcy counsel that it is not a violation of [the] automatic stay for us to file the attached motions."

Wife filed a Motion for Relief from Automatic Stay Provisions of 11 U.S.C. § 362(a) ("Motion for Relief from Stay") with the Bankruptcy Court on December 17, 2015. The Bankruptcy Court subsequently entered an Order (the "Bankruptcy Order") on January 7, 2016, that: (1) granted relief from the automatic stay; (2) found that cause exists to "annul the automatic stay for the limited purpose of ratifying, validating, and enforcing the [October 9, 2015, Order]"; and (3) annulled the automatic stay. (Jan. 7, 2016, Bankr. Order 3.) The Court conducted a hearing on the Motion To Vacate and Motion To Reconsider on January 19, 2016.

*Positions of the Parties*

A. *Husband's Position*

Husband asserts that the Order is not a final order because, although it awards attorney's fees to Wife, it "did not resolve [Wife's] request for

attorney's fees." (Mot. To Reconsider ¶ 2.) According to Husband, the Order "stated that [Husband] was to pay costs and reasonable attorney's fees to [Wife], but did not award the amount of attorney's fees," which he argues is not a ministerial act. (Br. Regarding Finality 3.) He argues that his Motions To Vacate and Reconsider, therefore, were timely filed.

Husband also takes the position that, even if the Order were a final order, his Motions To Vacate and Reconsider the Order still are timely. He asserts that, although the Bankruptcy Court granted relief from the automatic stay, the twenty-one-day finality period expressed in Rule 1:1 of the Rules of Supreme Court of Virginia did not start to run until the Bankruptcy Order was entered on January 7, 2016. (*Id.* at 2.)

Husband contends that the Court should vacate the Order because Wife failed to comply with the Court's April 6, 2011, Order by "not appear[ing] before the Court, with notice to [Husband], to provide *prima facie* evidence to support her pleadings prior to the issuance of the show cause at the time she filed the request for the show cause order." (Mot. To Vacate ¶ 4.) In other words, Husband claims that Wife did not seek leave from the Court prior to filing the Petition for Show Cause that led to the Order. Husband also argues that the Court should reconsider the Order because the additional documentation he attached to his motion clearly demonstrates that the amount the Court ordered Husband to pay Wife is incorrect.

## B. *Wife's Position*

Wife asserts that the Order is a final order that cannot be modified after twenty-one days of when it was entered on October 9, 2015, pursuant to Rule 1:1 of the Rules of Supreme Court of Virginia. She argues that the Court, therefore, does not have jurisdiction to vacate or reconsider the Order.

Wife asserts that the annulment of the automatic stay by the Bankruptcy Court not only validated the Order, but also removed any impediment from the normal running of the twenty-one-day finality clock. She takes the position that the Order's finality period ended prior to Husband's filing his Motions To Vacate and Reconsider and that the Court, therefore, does not have jurisdiction to alter the Order.

Wife further asserts that, even if the Order is not final, Husband either is estopped from relying on, or waived his right to rely on, the April 6, 2011, Order, as Husband never raised this issue prior to the entry of the October 9, 2015, Order. She claims that the Motion To Vacate, therefore, should be denied. Wife argues that Husband's Motion To Reconsider also should be denied because it asks the Court to reconsider its decision in light of documents that were available at the time of the Hearing but that Husband elected not to present previously.

*Legal Standard*

"All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Va. Sup. Ct. R. 1:1.

·"[A] final order or decree is one that disposes of the entire matter before the court, giving all the relief contemplated and leaving nothing to be done by the court except the ministerial execution of the court's order or decree." *McLane v. Vereen*, 278 Va. 65, 70, 677 S.E.2d 294, 297 (2009).

The filing of a bankruptcy petition imposes an "automatic stay" that halts actions by creditors, with certain exceptions, to collect debts from the bankruptcy debtor. 11 U.S.C. § 362. Initiation or continuation of a collection-related action subsequent to the filing of a bankruptcy petition is a violation of the automatic stay. *Id.* § 362(a).

A bankruptcy court may grant relief from the automatic stay, "such as by terminating, annulling, modifying, or conditioning such stay" for cause. *Id.* § 362(d). The power to annul "permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay. Such actions would otherwise be void." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 910 (6th Cir. 1993) (quoting 2 Collier on Bankr., § 362.07); see also *In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994) ("[T]he power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay." (quoting *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989)).

*Discussion*

The Court has considered the pleadings, oral argument at the January 19, 2016, hearing, and applicable authorities.

A. *The Court's October 9, 2015, Order Is a Final Order*

The Court's October 9, 2015, Order addresses the Court's earlier "Order to Show Cause regarding Defendant Mark Hartley's alleged failure to make payments to Plaintiff for 50% of the distributions from the sale of [certain real property] pursuant to [the Stipulation Agreement], which was affirmed, ratified, and incorporated by reference into the Court's June 9, 2008, Final Decree of Divorce." (Oct. 9, 2015, Order, at 1.) The Court ruled in the Order that, *inter alia*: "[Husband] willfully failed to make payments to which [Wife] was entitled"; "[Husband] is held in civil contempt of court as a result of his willful disobedience of the Court's June 9, 2008, Final Decree of Divorce"; "a civil judgment is awarded to [Wife] and against [Husband] in the amount of $190,900, with prejudgment interest of $152,808.73 . . . for a total judgment amount of $343,708.73"; and "[Husband] is required to

pay costs and reasonable attorney's fees to [Wife]." (*Id.* at 2.) The amount of the attorney's fees is not specified.

As noted above, "a final order or decree is one that disposes of the entire matter before the court, giving all the relief contemplated and leaving nothing to be done by the court except the ministerial execution of the court's order or decree." *McLane*, 278 Va. at 70, 677 S.E.2d at 297. Husband claims that, because "the determination of attorney's fees is not a ministerial matter," the Order necessarily is not a final order. (Br. Regarding Finality 3.)

Virginia appellate courts have addressed this issue and, although there may have been some doubt in the past regarding the outcome, it now is clear that an order awarding attorney's fees without specifying the amount — and lacking specific language in the order retaining jurisdiction — is a final order. Compare *Mina v. Mina*, 45 Va. App. 215, 609 S.E.2d 622 (2005) (finding that an order indicating that "the parties 'may' present their arguments for attorney's fees and costs at a later date" did not dispose of the issue of attorney's fees and, therefore, constituted a final order), with *Carrithers v. Harrah*, 60 Va. App. 69, 75, n. 1, 723 S.E.2d 638, 641 (2012) (holding that "a mere indication that the trial court intends to rule on pending motions is insufficient to negate the finality of an order rendering a final judgment on the merits of a case" and noting that, to the extent that *Mina*'s holding was contrary to this, it was superseded by Virginia Supreme Court precedent). In evaluating the broader issue of not having ruled on motions for attorney's fees, the Virginia Court of Appeals held in *Carrithers v. Harrah* as follows: "The fact that the trial court did not rule on the parties' motions for attorneys' fees and costs in its . . . order does not negate the fact that the . . . order was indeed a final judgment on the merits of the case." 60 Va. App. 69, 75, n. 1, 723 S.E.2d 638, 641 (2012). In *Carrithers*, the trial court ruled on a child support matter and remanded the case to the juvenile and domestic relations district court for all matters pertaining to child support. *Id.* at 72, 723 S.E.2d at 639. The trial court issued a letter to the parties on the same day, directing them to file briefs regarding their respective motions for attorneys' fees and costs, and the court subsequently ruled on those motions — after the expiration of the twenty-one-day finality period. *Id.* The court held that the trial court's letter "did not affect the finality of the trial court's order entered that same day disposing of the merits of the case." *Id.* at 73, 723 S.E.2d at 640.

The *Carrithers* court relied on language used by the Virginia Supreme Court:

> [W]hen a trial court enters an order, or decree, in which a judgment is rendered for a party, *unless that order expressly provides that the court retains jurisdiction* to reconsider the judgment or *to address other matters still pending* in the action

before it, *the order renders a final judgment* and the twenty-one day time period prescribed by Rule 1:1 begins to run.

*Id.* at 73-74, 723 S.E.2d at 640 (quoting *Johnson v. Woodard*, 281 Va. 403, 409, 707 S.E.2d 325, 328 (2011)).

The cases on which Husband relies in his Brief Regarding Finality for the proposition that the absence of an attorney-fee amount precludes the finality of the order are easily distinguishable. (*See* Br. Regarding Finality, 4-5.) The Virginia Supreme Court in *Williamsburg Peking Corp. v. Kong* simply held that a trial court has jurisdiction to hear a motion for sanctions during the twenty-one-day finality period after entry of a final nonsuit order. 270 Va. 350, 355, 619 S.E.2d 100, 102 (2005). The Supreme Court in *Johnson v. Woodard* held that a nonsuit order was not a final order where the order included language specifically stating that the trial court retained jurisdiction to consider the motion for sanctions. 281 Va. 403, 409-10, 707 S.E.2d 325, 328 (2011).

Here, the Order specifically ordered Husband to pay attorney's fees and did not contain language retaining jurisdiction to address the specific amount of attorney's fees or anything else. Under the circumstances, the absence of a specific fee amount in the Order does not preclude it from being a final order.

**B.** *In Light of the Court's October 9, 2015, Order and Husband's Bankruptcy Proceeding, the Court Does Not Have Jurisdiction To Consider Husband's Motions To Vacate or Reconsider the Order*

Husband filed a petition in bankruptcy on September 24, 2015, and failed to notify the Court — and apparently Wife — of his filing. The petition date was after the August 25, 2015, Hearing and before the Court issued its related Order on October 9, 2015. Pursuant to the United States Bankruptcy Code, the filing of a bankruptcy petition imposes an immediate automatic stay that ceases actions by creditors, with certain exceptions, to collect debts from the debtor. 11 U.S.C. § 362. The Court's imposition of a judgment against Husband, the bankruptcy debtor, via its October 9, 2015, Order, therefore, violated the automatic stay. As noted, the Court was unaware of Husband's bankruptcy filing when it issued its Order on October 9, 2015. Wife subsequently moved the Bankruptcy Court for an annulment of the automatic stay with respect to this Court's Order, and the Bankruptcy Court granted the motion.

Section 362(d) of the Bankruptcy Code expressly permits the Bankruptcy Court to annul the automatic stay. 11 U.S.C. 362(d) (indicating that the automatic stay may be "annulled, terminated, modified, or conditioned" under certain conditions, including for cause). "The power to annul authorizes the court to validate actions taken subsequent to the impressing of the § 362(a) stay." *Sikes*, 881 F.2d at 178. Stated differently, an annulment

retroactively validates actions taken by a creditor who may have been unaware of the existence of the automatic stay. *Easley*, 990 F.2d at 910. The situation here arguably is exactly what the annulment provision in the Bankruptcy Code was designed to address; it, therefore, is unsurprising that the Bankruptcy Court granted Wife's annulment request.

The U.S. District Court for the Eastern District of Virginia in *Khozai v. Resolution Trust Corp.* clarified the distinction between an order annulling the automatic stay and an order terminating the stay:

> In addition to the obvious power to "terminate" the stay, § 362(d) also gives the bankruptcy court the power to "annul" the stay. The difference between the two is that an order annulling the stay could operate retroactively to the date of the filing of the petition which gave rise to the stay and thus validate actions taken by the party at a time when he may have been unaware of the existence of the stay. On the other hand, an order terminating the stay would be operative only from the date of its entry.

177 B.R. 524, 526-27 (E.D. Va. 1995) (citing 2 *Collier's Bankruptcy Manual*, § 362.06 (3d ed. 1983)); see also *In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997) ("The only plausible distinction between the two verbs in this context is that terminating the stay blunts it prospectively, from the moment the court's order enters, whereas annulling the stay erases it retrospectively, as of some date prior to the entry of the court's order (reaching as far back as the date when the debtor filed the bankruptcy petition, if the court so elects).").

The purpose of annulling the automatic stay clearly is to retroactively validate actions taken in violation of the stay, typically in situations in which the entity seeking the annulment was unaware of the bankruptcy proceeding. On its face, however, this only indirectly answers the question of when the validated action is deemed to occur for purposes of establishing finality of the related order.

*Black's Law Dictionary* defines "annulment" as "[t]he act of nullifying or making void." Annulment, *Black's Law Dictionary* (10th ed. 2014). Annulment of the automatic stay, therefore, implies that the stay is deemed to never have existed with respect to the matter for which it was annulled. *See id.* (providing the example that "[a]n annulment establishes that the marital status *never existed*" (emphasis added)). This is consistent with terminology used by bankruptcy courts when discussing annulment of the stay. *See, e.g., In re Soares*, 107 F.3d at 976 (referring to *lifting* the stay, *setting aside* the stay, and *erasing* the stay). Hence, once the automatic stay is annulled, the post-petition action is retroactively validated as if the stay never existed, *i.e., as of the date the action originally was taken.* Upon annulment of the automatic stay here, this Court's Order, therefore, was

validated *as of October 9, 2015*, the date the Order was entered. *See Vick v. Commonwealth*, 201 Va. 474, 476, 111 S.E.2d 824, 826 (1960) (holding that "orders speak as of the day they were entered"). With no bankruptcy stay, the twenty-one-day finality clock began to run at the same time. *See* Va. Sup. Ct. R. 1:1. Any motions filed after the finality period ended twenty-one days later on October 30, 2015, including Husband's Motions To Vacate and Reconsider the Order, which were filed on December 8, 2015, therefore, are untimely, as the Court no longer has jurisdiction to entertain such motions. *See id.*

Husband asserts that, although the Bankruptcy Order validated this Court's October 9, 2015, Order, the October 9 Order is effective as of the date of the Bankruptcy Order, January 7, 2016, and not as of October 9, 2015, and that the twenty-one-day finality clock, therefore, began to run on January 7, 2016. Husband also argued at the Hearing that there is no substantive difference between annulment and termination of the automatic stay under the Bankruptcy Code. Husband's position is fundamentally flawed for at least three reasons. First, equating annulment and termination ignores the plain meaning of the terms, as discussed *supra*. Second, the use of both "terminating" and "annulling" in Section 362(d) of the Bankruptcy Code indicates that the two terms have separate meanings. *See Soares*, 107 F.3d at 976 ("In drafting the law, Congress chose to include both the power to terminate the stay and the power to annul it. When construing this language, we must try to give independent meaning to each word."). Third, if annulment of the automatic stay resulted in lifting the stay as of the date of the Bankruptcy Order, as termination of the stay would, the stay still would have been in effect when the October 9, 2015, Order was entered, thereby precluding the desired result of retroactively validating the October 9, 2015, Order. There simply is nothing to support Husband's argument that annulment of the automatic stay somehow resulted in the October 9, 2015, Order becoming effective on January 7, 2016, when the Bankruptcy Order was entered.

In light of the retroactive nature of an automatic stay annulment, it might initially appear inequitable to simultaneously annul the stay and declare the finality period extinguished.

Husband appears to have made this argument in his Brief Regarding Finality: "Had the bankruptcy court granted retroactive relief, it would have divested this court of jurisdiction to amend the order within twenty-one days and divest the appeals court of its authority to hear an appeal." (Br. Regarding Finality 2-3.) As Husband acknowledged in his letter to the Clerk of Court, however, the stay, which was in effect prior to the annulment, did not preclude him from filing his Motions To Vacate and Reconsider. In fact, he filed those motions prior to Wife's Motion for Relief from Stay was filed with the Bankruptcy Court. Husband filed his motions on December 8, 2015, and Wife filed her motion in the Bankruptcy Court

on December 17, 2015. Husband, therefore, was free to file his motions within the twenty-one-day finality period subsequent to the Court's entry of its Order on October 9, 2015, but he chose not to do so. Husband contends that had he filed his motions within twenty-one days of October 9, 2015, this Court would not have had jurisdiction to amend the Order in light of the automatic stay. (Br. Regarding Finality 3.) Assuming the Court became aware of the bankruptcy proceeding — from Husband or otherwise — the Court could have either vacated the Order—as Husband acknowledges (*id.* at 3), or suspended the Order during the twenty-one-day finality period. Va. Sup. Ct. R. 1:1. Husband, therefore, has no equitable grounds on which to complain that the imposition of the automatic stay, *which only he controlled,* somehow prevented him or prejudiced him from timely filing his motions.

In light of the Court's holdings that the Order is a final order and that Husband's Motions To Vacate and Reconsider the Order were untimely filed, the Court need not, and indeed cannot, vacate or modify the Order. Even if the Court had jurisdiction to do so, *arguendo*, vacation or modification of the Order is not warranted under the circumstances present here.

The Court's April 6, 2011, Order, on which Husband relies in his Motion To Vacate, essentially requires Wife to seek leave of Court, with notice to Husband, prior to filing a Petition To Show Cause against Husband. (*See* Mot. To Vacate Ex. A.) As noted in Husband's motion, Wife failed to comply with this requirement. (*Id.* ¶ 4.) Nevertheless, Husband failed to raise this issue: (1) in response to the Order To Show Cause issued by the Court on November 25, 2014; (2) at the Hearing on August 25, 2015, *nine months later*; (3) in his post-Hearing brief filed on September 17, 2015; or (4) at any time prior to the Court's entry of its October 9, 2015, Order. The Court, therefore, finds that, under the circumstances, Husband is judicially estopped from raising the issue for the first time belatedly and in light of his prior inconsistent actions. *See Lofton Ridge, L.L.C. v. Norfolk S. Ry.,* 268 Va. 377, 380-81, 601 S.E.2d 648, 650 (2004) (opining that "judicial estoppel forbids parties from 'assuming successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory'," quoting *Burch v. Grace St. Bldg. Corp.,* 168 Va. 329, 340, 191 S.E. 672, 677 (1937). Alternatively, to the extent that Husband intentionally failed to bring this issue to the attention of the Court earlier, he has waived any right to raise it for the first time now. *See Baumann v. Capozio,* 269 Va. 356, 360, 611 S.E.2d 597, 599 (2005) (opining that waiver "is the voluntary, intentional abandonment of a known legal right, advantage, or privilege" (quoting *Fox v. Deese,* 234 Va. 412, 425, 362 S.E.2d 699, 707 (1987)).

Husband's request for the Court to reconsider its ruling in the Order is not based on newly discovered evidence or any other recognized basis for reconsideration. Rather, Husband presents by way of hearsay documentation attached to his Motion for Reconsideration copies of bank statements,

checks, a corporate balance sheet, and a letter between counsel with an attached accounting spreadsheet. These documents either were presented or referenced at the Hearing or were available to Husband at the time of the Hearing and, for some reason, were not offered into evidence. Of note, Husband failed to even appear in person at the Hearing. It simply would be inappropriate for the Court to consider such documentation at this time and provide Husband the proverbial "second bite at the apple."

*Conclusion*

For the foregoing reasons, the Court finds that the October 9, 2015, Order is a final order and that the Court no longer has jurisdiction to vacate or reconsider the Order. The Court, therefore, denies the Motion To Vacate and denies the Motion To Reconsider.

February 18, 2016

On January 19, 2016, the parties, by counsel, appeared before the Court for a hearing on Defendant Mark Hartley's Motion To Vacate and Motion To Reconsider. In the Court's January 25, 2016, Letter Opinion, the Court denied the motions and directed Plaintiff's counsel to prepare, circulate, and submit an Order. The parties failed to agree on the wording of the Order, requiring the Court to prepare this Order. Wherefore, it is hereby ordered, adjudged, and decreed that, for the reasons more fully explained in the Court's related January 25, 2016, Letter Opinion, which is incorporated herein by reference, Defendant's Motion To Vacate is denied and Defendant's Motion To Reconsider is denied; that, pursuant to the U.S. Bankruptcy Court for the Eastern District of Virginia's January 17, 2016, Order, the automatic stay associated with Mr. Hartley's bankruptcy case was annulled for the limited purpose of ratifying, validating, and enforcing this Court's October 9, 2015, Order, and that Plaintiff, therefore, can enforce that Order; that, pursuant to this Court's October 9, 2015, Order, Mr. Hartley was required to make certain scheduled payments to purge his contempt charge, as well as to pay Plaintiff's costs and reasonable attorney's fees; that the October 9, 2015, Order provided that "should [Mr. Hartley] fail to make any scheduled payment to purge the contempt, Plaintiff can move the Court to issue a *capias* for [his] arrest and further sentencing"; that the October 9, 2015, Order provided that "defendant Mark Hartley shall immediately comply with the terms of this Order or he shall be subject to incarceration for his civil contempt"; that, despite the Court's finding in its January 25, 2016, Letter Opinion that the October 9, 2015, Order is a final order, the Court retains jurisdiction to address the collateral matter of determining the *amount* of the previously awarded "costs and reasonable attorney's fees" (*Carrithers v. Harrah*, 60 Va. App. 69, 74, 723 S.E.2d 638, 640 (2012); *see also Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988)); and

that, by letter dated February 11, 2016, Plaintiff informed the Court that Mr. Hartley has failed to make any of the scheduled payments to purge his contempt charge and has failed to pay Plaintiff's costs and reasonable attorney's fees; and further, it is hereby ordered, adjudged, and decreed that defendant Mark Hartley is ordered to appear *personally* in court and show cause why he should not be held in contempt of court for failing to comply with the Court's October 9, 2015, Order, and Counsel shall coordinate with the Clerk of Court to schedule a show cause hearing to occur within the next sixty days; and that, if the parties are unable to agree on the amount of Plaintiff's costs and reasonable attorney's fees, Plaintiff is directed to notice a hearing for a final determination of the amount by the Court, which hearing may be contemporaneous with the above-referenced show cause hearing.